## GROUF v. STATE NAT. BANK OF ST. LOUIS.

No. 10054.

Circuit Court of Appeals, Eighth Circuit.

March 28, 1935.

Samuel R. Wachtell, of New York City (Theodore Rassieur and John P. McCammon, both of St. Louis, Mo., and Harold J. Manheim, of New York City, on the brief), for appellant.

Marion C. Early, of St. Louis, Mo. (Ivon Lodge, of St. Louis, Mo., on the brief), for appellee.

Before SANBORN, WOODROUGH, and BOOTH, Circuit Judges.

BOOTH, Circuit Judge.

For opinion on prior appeal of this case, see (C. C. A.) 40 F.(2d) 2.

The merely formal facts and many of the undisputed facts which are set out in the former opinion need not be here repeated.

The action was upon a letter of credit and drafts drawn upon the faith of the same.

A jury was duly waived and the case tried to the court.

The letter of credit was issued August 13, 1915, by appellee, addressed to Anglo-Austrian Bank, whose name was subsequently changed to Anglo-Austrian Bank, Limited (hereinafter called the Austrian

Bank). The beneficiaries of the letter of credit were Francis L. Stuever and Celia M. Stuever, his sister, American citizens then temporarily residing in Vienna, Austria.

Upon the faith of and pursuant to said letter of credit, the Austrian Bank cashed, and paid in kronen, drafts drawn by the Stuevers as follows:

| | |
|---|---|
| To Francis L. Stuever, February 1, 1916........ | $ 100.00 |
| To Celia M. Stuever, March 10, 1916......... | 400.00 |
| To Celia M. Stuever, March 13, 1916......... | 400.00 |
| To Celia M. Stuever, March 17, 1916......... | 400.00 |
| To Celia M. Stuever, March 24, 1916......... | 400.00 |
| To Celia M. Stuever, March 29, 1916......... | 400.00 |
| To Francis L. Stuever, April 7, 1916......... | 100.00 |
| To Celia M. Stuever, April 26, 1916.......... | 3100.00 |
| To Francis L. Stuever, April 28, 1916........ | 4150.00 |
| | $9450.00 |

Owing to the World War then existing, it was not feasible for the Austrian Bank to transmit some of the drafts drawn; and in December, 1916, it had in its possession five of them, of the face amount of $8,150.

Findings of fact 11, 12, 13, 14, and 15 of the trial court covering some of the disputed facts are as follows:

"11. The Court further finds that on or about October 26, 1916, the Anglo-Austrian Bank requested Dr. Stuever to personally reimburse it for the $8100.00 drawn by him and his sister, that he undertook to do so, and procured a remittance from the Equitable Trust Co. of New York, through the Vienna Bank Union of the sum of 69,-528 Kronen then worth $8100.00. This money was received by the Anglo-Austrian Bank, and both this money and the drafts drawn by the Stuevers and aggregating the said sum of $8100.00 were retained by said Bank. That the Bank while holding this money refused to apply it on the payment of the drafts for the sole reason that it deemed itself payable in dollars and not in Kronen, and inferentially would have then suffered a small loss by so doing. That the Bank insisted on holding this money in a savings account but the Stuevers refused to agree and insisted that the money be applied on the drafts. In March, 1923, the said Bank forwarded a savings account book to the Stuevers, without any authority for such act. At the time this book was sent the 69,528 Kronen were worth less than 30 cents.

"12. The Court finds that on or about October 26, 1916, the Anglo-Austrian Bank presented to and demanded payment from Francis L. Stuever and Celia M. Stuever of five checks it had previously cashed for them pursuant to letter from defendant, State National Bank, to said Anglo-Austrian Bank, dated August 13, 1915, and the Court further finds that said Anglo-Austrian Bank had paid said five checks to said Stuevers by delivering to them the equivalent thereof in Austrian Kronen, and the Court further finds that the dates and amounts of said five checks as presented to said Francis L. Stuever and Celia M. Stuever by said Anglo-Austrian Bank were as follows:

| | |
|---|---|
| By Celia M. Stuever: | |
| Check dated March 16, 1916............... | $ 400.00 |
| Check dated March 29, 1916............... | 400.00 |
| Check dated April 28, 1916............... | 3100.00 |
| By Francis L. Stuever: | |
| Check dated Feb. 1, 1916.................. | 100.00 |
| Check dated April 28, 1916............... | 4100.00 |
| Total ............................... | $8100.00 |

"The Court further finds that said Anglo-Austrian Bank represented to said Stuevers that it could not forward said checks for payment to defendant, State National Bank in St. Louis, on account of danger of seizure by the military censor, and the Court finds that said Anglo-Austrian Bank proposed to said Francis L. Stuever and Celia M. Stuever that if they would pay the equivalent of said checks in Kronen, the same would be accepted by it as payment of said five checks, and the Court further finds that said Francis L. Stuever and Celia M. Stuever then and there accepted said proposal and agreed that they would request their agents in St. Louis, Missouri, to cause to be forwarded to said Anglo-Austrian Bank in Vienna, Austria, the equivalent of said checks in Kronen, and the Court further finds that on or about October 26, 1916, said Francis L. Stuever mailed a letter to their St. Louis agents, requesting that money be forwarded to said Anglo-Austrian Bank to pay said checks, and the Court finds that a check for $8100.00 was by said agents delivered to defendant, State National Bank in St. Louis, for payment of said checks and that pursuant to instructions said State National Bank did arrange, through the Equitable Trust Company of New York City, New York, to forward, and did forward, 69,528 Kronen, to said Anglo-Austrian Bank, that being the full equivalent in Kronen of said five checks, and the Court further finds that said 69,528 Kronen was delivered to and retained by said Anglo-Austrian Bank,

and the Court finds that the receipt and retention of said 69,528 Kronen by said Anglo-Austrian Bank constituted payment and satisfaction pro tanto of the demands herein sued upon.

"The Court further finds that in listing the check drawn by Francis L. Stuever, dated April 28, 1916, the amount of said check so furnished by said Anglo-Austrian Bank to said Francis L. Stuever and Celia M. Stuever, was designated by said Bank as $4100.00, and the Court finds that it appears from the check offered in evidence that the correct amount of said check was $4150.00, but the Court finds that the error was the error of the Anglo-Austrian Bank and not of said Stuevers.

"13. The Court further finds that the sum of 69,528 Kronen received by the Anglo-Austrian Bank was at the time of such receipt the equivalent of $8100.00, and was not payment in full of the drafts aggregating $9450.00 in suit and did not discharge defendant's full liability on said drafts, but only partially.

"14. That F. L. Stuever, and Celia M. Stuever were secondarily liable to said bank on account of having presented the said drafts, and that when the said bank received 69,528 Kronen, they requested the said bank to apply the same in partial payment of the obligation represented by the said drafts, but the said bank held both the drafts and the Kronen and refused to apply the said funds in partial payment of the amount then due.

"15. That in December, 1916, Kronen was the lawful medium of exchange in Austria, and at that time foreign exchange including American dollars became the property of the Government, and holders thereof were compensated in Kronen. (The answer on page 109 of the transcript of the witness Dr. Pieta, who testified with respect to the Austrian Law, which was stricken at the trial, is now reinstated as evidence in this cause.)"

The evidence on the second trial supplemented that given on the first trial; and the findings of the court on the second trial materially modified and supplemented the findings made on the first trial.

Finding 12 on the second trial is substantially new. It covers an alleged agreement between the Stuevers and the Austrian Bank as to the Bank's receiving kronen in payment of the drafts which had been cashed but had not been transmitted to the Bank at St. Louis.

Findings 14 and 15 are substantially new.

■ We have examined the evidence in the record relative to the facts stated in the above-mentioned findings, and are of the opinion that the findings are supported by substantial evidence. Under the familiar rule, they will, therefore, not be disturbed.

The situation disclosed is, accordingly, somewhat as follows: The Austrian Bank held five drafts amounting to $8,150, which it had cashed for the Stuevers on the faith of the letter of credit in their behalf from the appellee Bank in St. Louis. The Austrian Bank, finding it not feasible to forward the drafts to St. Louis on account of war conditions, requested the Stuevers to personally reimburse it for the drafts so held, and the Bank agreed that if the Stuevers would pay the equivalent of said drafts in kronen, the same would be accepted by it in payment of the drafts. The Stuevers accepted the proposal and agreed to instruct their agent in St. Louis to forward to the Austrian Bank the amount in kronen. A list of the drafts with dates and amounts was furnished by the Bank to the Stuevers. The total amount so furnished was $8,100. The true amount of the drafts held by the Bank was $8,150; but by an error of the Bank, the amount was stated to the Stuevers as $8,100.

The Stuevers carried out their part of the agreement, and the result was that there were placed in the hands of the Austrian Bank 69,528 kronen, the equivalent at that time of $8,100.

The Austrian Bank refused to apply these kronen as a payment on the drafts on the sole ground, as stated at that time, that it was entitled to receive dollars; but the Austrian Bank retained the kronen and refused to deliver to the Stuevers either the drafts or the kronen.

No mention was made at that time of the shortage of $50 worth of kronen.

The market value of kronen thereafter declined to almost nothing while they were still held and controlled by the Austrian Bank.

After the war the Austrian Bank brought the present suit, through appellant, against the appellee, the St. Louis Bank, for the full amount of the drafts cashed and unpaid under the letter of credit.

The trial court entered judgment for $1,350, which was the amount of the drafts concededly unpaid, plus the $50 also concededly unpaid under the agreement be-

tween the Austrian Bank and the Stuevers, on account of the error above mentioned.

Appellant presents and argues in its brief four points:

"1. Payment by the beneficiary of a letter of credit to the addressee is not a defense in a suit by the addressee against the issuer of the letter.

"2. Finding No. 12 is insufficient as a finding of payment by the Stuevers to the Anglo-Austrian Bank.

"3. The defenses of estoppel and release were not proved.

"4. The court erred in admitting into evidence, over the appellant's objection and exception, Defendant's Exhibit L."

Taking them up in their order:

On the former appeal we discussed to a limited extent the theory of liability of the writer of a letter of credit to the addressee of such letter and said, 40 F.(2d) 2, p. 5: "Equities existing in favor of the beneficiary afford no defense to the issuer of the letter of credit against the addressee who has paid money to the beneficiary upon the faith of the letter of credit, and in accordance with its terms."

We quoted from the case of Laudisi v. American Ex. Nat. Bank, 239 N. Y. 234, 146 N. E. 347, 350, as follows: "The contract between the customer and the bank, under which the latter issues an irrevocable letter of credit, is entirely distinct and apart from the contract between such customer and, as in this case, his vendor under which goods are to be shipped. The question between the customer and the vendor is the one whether the goods comply with the contract, and if they do not the former has his appropriate right of action. The question between the customer and the bank which issues the letter of credit is whether the documents presented with the draft fulfill the specific requirements, and if they do, speaking of such facts as exist in this case, the bank has the right to pay the draft no matter what may be the defects in the goods which have been shipped. The bank is not obliged to assume the burdens of a controversy between the vendor and vendee and incur the responsibility of establishing as an excuse for not paying a draft that the vendee's version is the correct one."

Also from the case of Frey & Son, Inc., v. E. R. Sherburne Co., 193 App. Div. 849, 184 N. Y. S. 661, 664: "It would be a calamity to the business world * * * if for every breach of a contract between buyer and seller a party may come into a court of equity and enjoin payment on drafts drawn upon a letter of credit issued by a bank."

But we added: "Whether the rules above stated are broad enough to preclude the issuer of the letter of credit from relying upon the defense of payment to the addressee of the letter by the beneficiary, we need not determine. Although such a defense was set up in the case at bar, and evidence was introduced in support thereof, yet, the trial court has made no finding of payment by the beneficiary."

On the second trial, the court has made (in finding 12) what we shall for the moment assume to be a sufficient finding of payment by the Stuevers to the Austrian Bank.

We are thus squarely presented with the question whether such payment is a defense which can be set up by the writer of the letter of credit (the St. Louis Bank) when sued by the addressee.

It is to be noted in the first place that the defense thus set up is not an equity in favor of the beneficiary and against a third party such as a seller of goods to the beneficiary. The defense, therefore, does not come strictly within the rules above noted. Payment as a defense is not an equity but a strictly legal defense. The question, therefore, is whether payment by one not primarily liable on the obligation can be set up as a defense by the party primarily liable.

It must be remembered that the Stuevers were not strangers to the transaction between the St. Louis Bank and the Austrian Bank. By reason of that transaction, the Stuevers had received moneys from the Austrian Bank. Because they had received the moneys, and because the Austrian Bank could not avail itself of the usual means for obtaining payment, that Bank requested the Stuevers to make payment in part of the debt owing by the St. Louis Bank. The Stuevers agreed to do so.

We see nothing invalid in such an agreement; and if the payment was in fact made, we see no good reason why it should not be set up as a defense by the St. Louis Bank when sued by the Austrian Bank. Such we understand to be the law in Missouri where the obligation was to be paid by the St. Louis Bank under the letter of credit [see Bacon v. Reichardt (Mo. Sup.)

208 S. W. 24; Stark v. Scherf (Mo. App.) 207 S. W. 863]; and such we understand from the testimony in the record to be the law in Austria where the alleged payment by the Stuevers was made. The general law is in accord.

In Restatement of the Law of Contracts by the American Law Institute, the law applicable to the case at bar is thus stated (section 421): "A payment or other performance by a third person, accepted by a creditor as full or partial satisfaction of his claim, discharges the debtor's duty in accordance with the terms on which the third person offered it. But the debtor on learning of the payment or other performance has power by disclaimer within a reasonable time to make the payment or other performance inoperative as a discharge."

In the case at bar, the payment by the Stuevers to the Austrian Bank was made, not in satisfaction of the whole debt owed by the St. Louis Bank to the Austrian Bank, but in part satisfaction. It was retained by the Austrian Bank and kept under the control of the Bank, although the Stuevers offered to receive it back.

There was no disclaimer by the St. Louis Bank.

See on the general subject of payment by a third person: Leavitt v. Morrow, 6 Ohio St. 71, 67 Am. Dec. 334; Crumlish's Adm'r v. Central Imp. Co., 38 W. Va. 390, 18 S. E. 456, 23 L. R. A. 120, 45 Am. St. Rep. 872; Smader v. Columbia Wis. Co., 188 Wis. 530, 205 N. W. 816; Braun v. Cox, 202 Iowa, 1244, 211 N. W. 891. See, also, 48 C. J. p. 589; 1 C. J. p. 535; 21 R. C. L. p. 31, § 26; 1 R. C. L. p. 182, § 11; p. 193, § 28.

As to the second point urged by appellant, it is contended that finding 12 is insufficient as a finding of payment, first, because there was no acceptance of the amount furnished by the Stuevers; second, because the amount was insufficient.

■ We do not agree with these contentions. We think the finding was sufficient as a finding of payment. It is true that the letter of credit called for payment of dollars by the St. Louis Bank. But the medium of payment can be waived by the creditor, and the Austrian Bank, by its agreement with the Stuevers, agreed to accept kronen instead of dollars. The medium of payment provided in the letter of credit was therefore waived. The Austrian Bank had full knowledge of its rights. See Rand v. Morse, 289 F. 339 (C. C. A. 8); Mitchell v. Kemp & Burpee Mfg. Co. (C. C. A.) 218 F. 843; G. Amsinck & Co. v. Springfield Grocer Co., 7 F.(2d) 855 (C. C. A. 8). That Bank's verbal refusal to accept the kronen was, under the circumstances, of no avail. Acceptance of an offer may be by exercise of dominion over the thing offered.

In Restatement of the Law of Contracts, the law is thus stated (section 72): "Where the offeree exercises dominion over things which are offered to him, such exercise of dominion in the absence of other circumstances showing a contrary intention is an acceptance. If circumstances indicate that the exercise of dominion is tortious the offeror may at his option treat it as an acceptance, though the offeree manifests an intention not to accept."

See Beck Elec. Const. Co. v. Nat. Contracting Co., 143 Minn. 190, 173 N. W. 413.

The Bank's exercise of dominion over the kronen was an acceptance.

As to the discrepancy in amount, it is to be noted that the record shows no mention of this by the Bank at the time. The sole objection was as to the medium of payment.

If, as intimated by appellant, the Stuevers were under no obligation whatever to reimburse the Austrian Bank, but were mere strangers, then the payment by them to the Bank of kronen in sufficient amount to pay $8100 might, if assented to by the Austrian Bank, be considered as an accord and satisfaction for the full amount of $8,-150. See People's Exchange Bank v. Miller, 139 Kan. 3, 29 P.(2d) 1079; Partridge v. Moynihan, 59 Misc. 234, 110 N. Y. S. 539; Chamberlain v. Barrows, 282 Mass. 295, 184 N. E. 725; Clark v. Abbott, 53 Minn. 88, 55 N. W. 542, 39 Am. St. Rep. 577; Bacich v. Northland Transportation Co., 185 Minn. 544, 242 N. W. 379, 387. See, also, Annotation, 41 A. L. R. p. 1491.

But appellee does not contend for this.

The finding of the court is that the receipt and retention by the Bank of the amount furnished was a payment pro tanto. This is also the position of the appellee.

This contention of appellant as to shortage in effect is an attempt to "mend the hold" of the Austrian Bank long after the transaction occurred and after litigation had

been begun. We think it should not be allowed. Rand v. Morse, supra, 289 F. 339, 345; G. Amsinck & Co. v. Springfield Grocer Co., supra.

We think the circumstances disclosed by the record amply support the finding of a payment pro tanto. See Voss v. Mut. Benefit, etc., Co. (C. C.) 81 F. 24; 48 C. J., p. 594.

As to point 3, it is not necessary, in view of what has already been said, to discuss the questions raised. It has in effect been covered in the discussion as to point 1.

As to point 4, the admission of the evidence objected to was, under the circumstances, not reversible error. The testimony elicited was simply cumulative.

Our conclusion is that the judgment entered was right, and the same is accordingly affirmed.