The FIRST NATIONAL BANK OF MILACA, Plaintiff,

v.

James E. SMITH, Comptroller of the Currency of the United States, Defendant.

No. 6–76–Civ–229.

United States District Court, D. Minnesota, Sixth Division.

May 31, 1977.

Fred J. Hughes and Kevin J. Hughes, Hughes, Hughes, Thoreen & Sullivan, St. Cloud, Minn., for plaintiff.

Robert G. Renner, U. S. Atty., Francis X. Hermann, Asst. U. S. Atty., Minneapolis, Minn., Rex E. Lee, Asst. Atty. Gen., David J. Anderson, and R. Joseph Sher, Trial Atty., Dept. of Justice, and James V. Elliott, Office of the Comptroller of the Currency, Washington, D. C., for defendant.

## MEMORANDUM and ORDER

DEVITT, Chief Judge.

█ In this action for monetary and injunctive relief, plaintiff petitions the court to review the regulation recently promulgated by the Comptroller of the Currency which altered the method of assessing national banks for the costs of bank examinations conducted by the Comptroller. The matter was initially presented on cross motions for summary judgment. Previously, on March 30, 1977, the court denied the motions on the ground that defendant's reservation of the right to raise the defense of failure to exhaust administrative remedies created a possible jurisdictional defect. The parties responded to that order by affirmatively stipulating that plaintiff has exhausted its administrative remedies. Therefore, the matter appears ready for decision. Although no new motions have been filed, the court has the power to enter summary judgment *sua sponte* since both parties have stipulated their renewed willingness to have the matter disposed of in this manner and have had full opportunity for argument. 10 C. Wright and A. Miller, Federal Practice and Procedure, 454 (1973).

█ The complaint bases subject matter jurisdiction upon 28 U.S.C. § 1346(a)(2) (1970). This provision states, *inter alia*, that:

> (a) The district courts shall have original jurisdiction . . . of . . .
>
> (2) Any other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department . . .

This aspect of the statute has received very little attention in the courts. However, the authorities that do exist indicate that this jurisdictional ground is properly invoked regarding damage claims when " . . . plaintiff is attempting to show that conduct of which he complains violates an Act of Congress." *Jackson v. Lynn*, 165 U.S.App. D.C. 172, 175, 506 F.2d 233, 236 (1974). Plaintiff asserts that the assessment sched-

ule violates the controlling statute, 12 U.S.C. § 482 (1970), and that it has been damaged in the amount of $1,900.00. Thus, the damage claim can be properly resolved by this court.

█ *Jackson v. Lynn, supra*, indicates that jurisdiction over the injunction action presents a different problem. In that case, the court held that it had power to review official action of the Federal Housing Administration, which plaintiff desired to alter through an injunction, by virtue of a provision of the Administrative Procedure Act (APA), 5 U.S.C. § 702 (1970). This alternative is foreclosed in this circuit since it has been held that the APA is not an independent grant of federal jurisdiction, *Twin Cities Chippewa Tribal Council v. Minnesota Chippewa Tribe*, 370 F.2d 529 (8th Cir. 1967). *But see State Highway Commission of Missouri v. Volpe*, 479 F.2d 1099 (8th Cir. 1973). However, the 1976 amendment to 28 U.S.C. § 1331(a) (Supp. VI, 1976) effectively eliminated this bar by deleting the $10,000.00 amount in controversy requirement for federal jurisdiction where the defendant is the United States, a federal agency, or a federal employee alleged to have been acting in his official capacity. The legislative history makes it clear that this amendment was intended to provide a jurisdictional basis for a suit, such as the present one, which seeks "non-statutory" review of agency action even though the amount in controversy is not capable of calculation or less than $10,000.00. H.R.Rep. No. 1656, 94th Cong., 2nd Sess. 13 (1976), 5 1976 U.S.Code Cong. and Admin.News, p. 6133. Moreover, by characterizing the amendment as procedural, this legislative history demonstrates Congress' intention that the amendment be applied to actions pending at the time of its enactment in accordance with the general rule. *Turner v. United States*, 410 F.2d 837 (5th Cir. 1969) and *Beatty v. United States*, 191 F.2d 317 (8th Cir. 1951). Thus, even though the amendment was passed subsequent to the filing of this lawsuit, and even though plaintiff has not pleaded it as a jurisdictional base, 28 U.S.C. § 1331(a) (Supp. VI, 1976) provides federal jurisdiction in the instant case.

■ One more preliminary matter must be resolved. This being a case involving review of agency action, the procedural aspects are governed by the judicial review provisions of the APA, 5 U.S.C. § 701 *et seq.* (1970). Defendant argues that 5 U.S.C. § 701(a)(2) (1970) precludes judicial review since the formulation of assessment schedules " . . . is committed to agency discretion by law." This claim must be analyzed in light of the heavy burden which is placed on an agency seeking to bar judicial review in the absence of a specific statutory prohibition. *Dunlop v. Bachowski*, 421 U.S. 560, 95 S.Ct. 1851, 1857, 44 L.Ed.2d 377 (1975). The Comptroller cites no such prohibition but argues that unreviewable discretion is implicitly vested by 12 U.S.C. § 481 (1970) which provides in pertinent part:

. . . the Comptroller of the Currency is authorized and empowered to prescribe regulations governing the computation and assessment of the expenses of examination herein provided for and the collection of such assessments from the banks and/or affiliate examined.

However, the statute primarily in issue, 12 U.S.C. § 482 (1970), limits this discretion by directing that assessments be computed in proportion to the size of the examined bank's assets or resources. This statutory limitation and the issues presented by a case calling for its interpretation are sufficient to support judicial review in this instance.

■ The basic guideline for determining whether a given action is committed to agency discretion by law is the practical one suggested by Professor Davis—are the questions presented of the type which courts are normally qualified to resolve? K. Davis, Administrative Law Text 515 (3rd Ed. 1972). In the case at bar, the court must interpret the controlling statute and determine whether the Comptroller exceeded his statutory authority in promulgating the new assessment schedule. This type of inquiry not only typifies but epitomizes the task of the judicial process. *Abbott Laboratories v. Gardner*, 387 U.S. 136, 149, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967). The Supreme Court has employed the language found in the APA's legislative history in determining the breadth of a particular statutory grant of discretion—is the statute drawn in terms so broad that in a given case there is no law to apply? *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 410, 91 S.Ct. 814, 821, 28 L.Ed.2d 136 (1971). Here, although the Comptroller's power to formulate an assessment schedule is stated broadly, it is limited by the requirement that assessments be specifically linked to assets or resources. Finally, the Court of Appeals for the Eighth Circuit spoke to the issue of reviewability of a decision by the Comptroller in *Webster Groves Trust Co. v. Saxon*, 370 F.2d 381, 387 (8th Cir. 1966).

The Comptroller . . . must be subordinate to the law from which he received his authority, and is subject to the limitations imposed by that law. Therefore, *if he acts in excess of his statutory grant of power*, acts arbitrarily or capriciously, abuses his discretion, or unlawfully discriminates in violation of the Constitution, he is certainly subject to restraint by the courts. (Emphasis added)

For the foregoing reasons, the court finds that the decision of the Comptroller to adopt a new assessment schedule is not committed to agency discretion by law.

■ The *Webster Groves* quotation is also instructive with regard to the appropriate scope of judicial review. As noted previously, this case turns on a question of statutory interpretation—did the Comptroller exceed his statutory power in promulgating the new assessment schedule? By filing cross motions for summary judgment the parties have indicated that no material factual dispute exists. Plaintiff does not attack the factual basis for the Comptroller's decision that a new assessment was needed. This being the case, the court need only resolve the question of law. *Webster Groves* suggests that this decision is to be made without any formal deference to the agency's expertise. Although the Comptroller's interpretation of the statute is relevant, it does not limit this court's review as

would be the case if review of factual findings was involved. Thus, the court holds that the applicable scope of review is the *de novo* review mandated by 5 U.S.C. § 706 (1970):

> . . . the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of the agency action.

*Accord, Dakota National Bank and Trust Co. v. First National Bank and Trust Company of Fargo,* 554 F.2d 345 at 350–351 (8th Cir. 1977).

Plaintiff's basic contention is that the new assessment schedule violates the formula mandated by 12 U.S.C. § 482 (1970):

> The expense of the examinations provided for in section 481 of this title shall be assessed by the Comptroller of the Currency upon national banks in proportion to their assets or resources.

Plaintiff argues that the plain meaning of the statute, the long-standing administrative interpretation, and the legislative history indicate that assets and resources are to be the sole variables in computing the examination assessment. More specifically, it claims that the assessment amount must equal some fixed percentage multiplied by the amount of assets or resources of the examined bank. The new assessment formula varies from this scheme. In order to more accurately relate an assessment to the actual bank examination cost, the Comptroller's new schedule is premised on a

"sliding scale" concept—as assets increase, the percentage used to compute the assessment decreases. The Comptroller contends that this schedule adheres to the statutory mandate inasmuch as assessment amount remains keyed to asset size.

With the above in mind, a non-issue must be considered at this juncture. The parties, particularly the Comptroller, have devoted a great deal of attention to the need or lack thereof for better relating assessment amount to examination cost. The Comptroller has cited statistical evidence indicating that, historically, large banks have paid substantially more than the actual cost of their examinations while small banks have paid substantially less. This situation, allegedly resulting from economies of scale involved in the examination of large banks is partially rectified under the new schedule. However, the court does not understand defendant to contend that it has the discretion to devise an assessment formula which specifically varies assessment amount with regard to examination cost as well as asset size. Rather, it appears that the Comptroller claims that it does have power to vary the percentage in order to roughly account for varying costs so long as asset size remains the sole independent variable in the assessment formula.[1] This position was made clear in the Comptroller's comments which accompanied the publication of the new schedule on January 22, 1976.[2]

· The key statutory terms which the court must interpret are " . . . in proportion

---

1. Although the percentage varies under the new schedule, it does not function independently of asset size. As asset size increases, the percentage employed to determine asset amount automatically decreases.

2. These comments were made in response to industry suggestions that the assessment system be strictly related to examination cost as is done with respect to examinations of the fiduciary activities of national banks. After citing the section in issue, 12 U.S.C. § 482 (1970), the Comptroller stated:

> The origin of this section was Section 54 of the National Bank Act of 1864, 13 Stat. 116, which established a system of assessment based on the length of time necessary to examine a particular bank. This was subsequently amended by Congress in 1875, 18

Stat. 329, by establishing a schedule of assessment based upon the capital of the bank examined. The present system of assessment, based on asset size, was specifically adopted by Congress in Section 21 of the Federal Reserve Act of 1913, 38 Stat. 271. Thus, with respect to the regular assessment of the commercial activities of national banks, Congress has rejected a system of assessment related to the actual cost of examination of each national bank and in its place has chosen a system based on the asset size of the bank. Any inequity which results because of difference in the time necessary to complete a regular examination of different or equal size banks has been created by Congress rather than by a decision of this office. 41 Fed.Reg. 3284 (1976).

to their assets or resources." Plaintiff claims that the plain meaning of this language calls for a fixed percentage to be multiplied by the examined bank's assets in order to calculate the assessment. The Comptroller contends that the words "in proportion to" mandate only that assessment amount be linked to asset size and do not require a relationship uniform for all banks. Both parties have supplied numerous dictionary and judicial definitions of the terms to support their respective positions. That being the case, the court simply refuses to decide the issue on the basis of such semantic, if not metaphysical, distinctions. The better approach is to interpret the statute in light of its purpose as expressed in the legislative history and by resort to settled rules of statutory construction. *Kokoszka v. Belford*, 417 U.S. 642, 650, 94 S.Ct. 2431, 2436, 41 L.Ed.2d 374, 381 (1974).

There is no legislative history which is relevant to the point in issue. Plaintiff flatly states this, and defendant impliedly concedes it since its use of legislative history was directed solely at anticipating arguments by plaintiff which were not raised. The only point which emerges from the legislative history is that made clear by the statute—asset size is the basis upon which banks are to be assessed for the costs of their examinations.

Two rules of statutory construction are helpful to a decision in the present case. First, although not dispositive, the interpretation of a statute by the agency responsible for its administration is entitled to great weight. *United Housing Foundation, Inc. v. Foreman*, 421 U.S. 837, 95 S.Ct. 2051, 2063 n. 24, 44 L.Ed.2d 621 (1975) and *Investment Company Institute v. Camp*, 401 U.S. 617, 626, 91 S.Ct. 1091, 1097, 28 L.Ed.2d 367, 376 (1971). This is particularly true where the interpretation has existed for a period sufficient in length to enable the legislative branch to note and correct the interpretation if believed erroneous. *Commissioner of Internal Revenue v. First Security Bank of Utah, N.A.*, 405 U.S. 394, 402 n. 16, 92 S.Ct. 1085, 1091 n. 16, 31 L.Ed.2d 318, 325 (1972) and *Zemel v. Rusk*, 381 U.S.

1, 11, 85 S.Ct. 1271, 1278, 14 L.Ed.2d 179, 187 (1965). The second rule of construction which is of aid is the principle that statutes relating to the same general subject matter are to be construed together in order to effectuate both. *Morton v. Mancari*, 417 U.S. 535, 551, 94 S.Ct. 2474, 2483, 41 L.Ed.2d 290, 301 (1974).

The Comptroller's considered determination that 12 U.S.C. § 482 (1970) authorizes an assessment system based on a declining percentage concept is persuasive. This system does not stray from the statutory mandate that asset size shall be the controlling factor in determining assessment amount. The Comptroller is free to better relate examination cost and assessment amount so long as asset size remains the independent variable in the assessment calculation. Moreover, this interpretation of the statute is not new. The previous assessment schedule imposed a flat fee of $200.00 per examination plus a fee of $.045 per $1,000.00 of assets. This method of assessment was used from 1914 through 1975. Plaintiff concedes that this system adhered to the statutory requirement. The Comptroller has demonstrated that this method, in effect, employed a sliding scale concept. Although plaintiff contends that the sliding scale effect is meaningless since it is *de minimus*, the fact remains that a sliding scale method was used for some sixty-two years prior to the 1976 regulation. Congress had ample opportunity to correct this administrative interpretation and failed to do so. Therefore, under the first rule of construction stated previously, the new assessment schedule appears to be authorized by the governing statute.

This conclusion is bolstered when one considers the effect of a section of the Independent Offices Appropriation Act for 1952, 31 U.S.C. § 483a (1970). It provides:

> It is the sense of the Congress that any work, service, report, document . . . or similar thing of value or utility . . . furnished, provided, . . . prepared, or issued by any Federal agency . . . to or for any person, . . . except those engaged in the transaction of offi-

cial business of the Government, shall be self-sustaining to the full extent possible . . . : *Provided*, That nothing contained in this section shall repeal or modify existing statutes prohibiting the collection, fixing the amount, or directing the disposition of any fee, charge or price: *Provided further*, That nothing contained in this section shall repeal or modify existing statutes prescribing bases for calculation of any fee, charge, or price, but this proviso shall not restrict the redetermination or recalculation in accordance with the prescribed bases of the amount of any such fee, charge, or price.

It is clear that bank examinations not only further the Comptroller's regulatory goals but aid the banks in analyzing the current status of their operations. Therefore, the Comptroller is directed, to the fullest possible extent, to assess fees reflective of the actual cost of examination while adhering to the statutory guideline of asset and resource size.[3]

Plaintiff argues that the first proviso renders the statute inapplicable to the present litigation. The only portion which is even arguably relevant is that dealing with existing statutes fixing the amount of a fee. However, the statute primarily in issue, 12 U.S.C. § 482 (1970), does not specify any assessment amount, it only provides a basis for calculation—asset size. The second proviso is much more material inasmuch as it calls for preservation of existing bases of fee calculation while directing recalculation of fees in order to realize the goal of self-sufficiency. This is precisely what the Comptroller sought to accomplish in promulgating the new assessment schedule.

For the foregoing reasons, it is ordered, plaintiff's motion for summary judgment is DENIED and defendant's motion for summary judgment is GRANTED.

---

**3.** The statute states that fees assessed under it are to be paid into the Treasury. The Comptroller receives no appropriations from Congress. Rather, it funds itself through bank examination assessments. It seems anomalous that Congress would require an agency which receives no money from the Treasury to pay money into the Treasury which another statute directs is to be used to fund the operations of the agency. The problem could be resolved by holding the statute inapplicable to an agency which is funded outside of the normal appro-

priations process or by interpreting the first proviso as mandating the theme of self-sufficiency while upholding the prior system of fund disposition. However, no party has addressed this issue, and the court is reluctant to enter the maze of the federal appropriations structure without the benefit of some briefing from counsel. In addition, since the Comptroller's interpretation appears to be supported under the theory of long-standing legislative acquiescence, the court need not further consider this complexity.