Jeff **DUFRESNE, et al., Respondents,**

v.

**AMERICAN NATIONAL BANK AND TRUST COMPANY, Appellant.**

No. C4–85–652.

Court of Appeals of Minnesota.

Oct. 1, 1985.
Review Denied Dec. 13, 1985.

Richard E. Berger, St. Paul, for respondents.

Richard J. Thomas, Geraghty, O'Loughlin & Kenney, St. Paul, for appellant.

Heard, considered and decided by POPOVICH, C.J., and SEDGWICK and LANSING, JJ.

## OPINION

LANSING, Judge.

American National Bank and Trust Co. appeals from a summary judgment requiring it to pay respondent beneficiaries their three-fourths share of a certificate of deposit issued by the bank to their grandmother as trustee and presented by respondents to the bank upon their grandmother's death. We affirm.

## FACTS

Ada Pasch, age 80, purchased a certificate of deposit in the sum of $13,745.32 from American National Bank and Trust Company on January 1, 1980, payable with interest on maturity on July 2, 1982. The certificate was designated as a trust account as defined by Minn.Stat. § 528.02, subd. 15 (1984), and issued to Ada Pasch as trustee. The beneficiaries were her son,

Curtis Pasch, and respondents, her grand-children.

The certificate contained the following terms and conditions:

c) This certificate matures the number of months after the date shown on the reverse side hereof and will not be automatically renewed, and will be paid upon maturity *on or after such maturity date, upon the presentation and surrender of this certificate by the registered owner.*

(Emphasis added).

Before maturity, the bank notified Ada Pasch by letter that the certificate would mature shortly and described options for redeeming it and reinvesting the proceeds. Pasch did not respond.

On February 23, 1983, seven months after the maturity date, the bank sent Pasch a letter advising her that the bank had deposited the proceeds, $14,627.71, into her non-interest bearing checking account held at the bank. The checking account was a joint account held in the names of Pasch and her son, Curtis. The certificate was not presented to the bank, nor did Pasch request payment.

Pasch wrote approximately 75 checks on the account after the deposit of the certificate proceeds and before her death on July 20, 1983, a period of approximately five months. She also made regular deposits into the account. The checks Pasch wrote during this period did not require use of the certificate proceeds until shortly before her death. Just before entering the hospital, approximately two weeks before her death, she issued checks which drew out about $163 of the certificate proceeds in her account.

Curtis Pasch wrote three checks on the joint account just before his mother's death. These checks drew out about half the certificate proceeds. On July 21 Curtis Pasch, as surviving joint tenant, took possession of the remaining funds in the account.

On October 25, 1983, respondents presented the bank with Ada Pasch's death certificate and the certificate of deposit. The bank refused to pay. After commencement of this action, both parties moved for summary judgment on the facts stipulated above.

## ISSUE

Did the trial court correctly rule that the bank failed to extinguish its liability to the respondents by transferring the certificate proceeds into the joint checking account without the request of the trustee or presentation of the certificate?

## ANALYSIS

The Minnesota Multi-Party Accounts Act, Minn.Stat. § 528.01–528.15 (1984), is a segment of the Uniform Probate Code enacted to comprehensively regulate the use of multi-party accounts, both for convenience and to permit the poor and middle class to achieve, through will substitutes, "a degree of control" over the post-mortem disposition of property previously attainable only through formal estate-planning devices. Note, *The "Poor Man's Will Gains Respectability: Using the Minnesota Multi-Party Accounts Act,"* 1 Wm.Mitchell L.Rev. 48, 48–49 (1974).

The Act defines an account, including a certificate of deposit, as a "contract of deposit of funds between a depositor and a financial institution." In establishing the trust account through the certificate of deposit, Ada Pasch initiated a contractual relationship with the bank that was defined by the terms of the depository agreement [1] and the applicable provisions of the Multi-Party Accounts Act. As trustee, Ada Pasch was the beneficial owner of the certificate of deposit during her lifetime, and the beneficiaries' interest in the certificate was inchoate until her death. *See* Minn. Stat. §§ 528.04(c), 528.05(c).

---

1. *See Lerbakken v. Twin City Federal Savings and Loan Assn.,* 304 Minn. 297, 230 N.W.2d 596 (1975), where the court held that the language printed on a passbook and joint account card constituted the contract between the depositor and the financial institution.

At trial the bank contended that the respondent beneficiaries had no legal interest in the funds and thus had no standing to maintain this action. We agree with the trial court that this argument is unpersuasive. If not for the bank's action in terminating the trust account, the respondents would have had a legal interest in the funds. The beneficiaries have standing to bring this action against the bank as third party beneficiaries and as individuals who allege injury through violation of a statute.

■ A beneficiary of a certificate of deposit may be a donee third party beneficiary. *Peoples Bank v. Baxter,* 41 Tenn. App. 710, 298 S.W.2d 732 (1956). The respondents were named as beneficiaries of the trust account; upon the death of Ada Pasch they were to become the owners of the funds that the bank had agreed to hold and pay interest on. This is a sufficient expression of Ada Pasch's intent to benefit them at the time the contract was made. *See Hedberg & Sons Co. v. New Amsterdam Casualty Co.,* 274 Minn. 422, 144 N.W.2d 263 (1966). As third party beneficiaries, the respondents have the right to enforce the promise made for their benefit. *See Northern National Bank of Bemidji v. Northern Minnesota National Bank of Duluth,* 244 Minn. 202, 70 N.W.2d 118 (1955); *Buchman Plumbing Co., Inc. v. Regents of the University of Minnesota,* 298 Minn. 328, 215 N.W.2d 479 (1974).

■ In determining standing for purposes of alleging violation of a statute, Minnesota has adopted the rule of *Association of Data Processing Service Organizations v. Camp,* 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970). *See Twin Ports Convalescent, Inc. v. Minnesota State Board of Health,* 257 N.W.2d 343 (Minn. 1977). This rule requires a showing of injury "in fact," plus an interest arguably among those sought to be protected by the statute in question. *Twin Ports,* 257

N.W.2d at 346. The Multi-Party Accounts Act regulates and protects the interests of multi-party account holders, including trustees, beneficiaries and financial institutions. As claimed beneficiaries of the trust account, the respondents show an interest among those intended to be protected by the statute. Their failure to receive the proceeds to which they claim to be entitled is a sufficient showing of injury in fact to provide standing under *Twin Ports.*

■ The trial court concluded that the bank breached the terms and conditions of the certificate when it unilaterally terminated the account without requiring presentation and surrender of the certificate.[2] The court further concluded that the bank did not discharge its liabilities under the Multi-Party Accounts Act.

The Act provides that "any trust account may be paid, *on request,* to any trustee." Minn.Stat. § 528.12 (emphasis added). "Request" is defined as

a proper request for withdrawals * * * which complies with all conditions of the account, including special requirements concerning necessary signatures and regulations of the financial institution.

Minn.Stat. § 528.02, subd. 13. Payment made pursuant to § 528.12 discharges the financial institution from "all claims for amounts so paid." Minn.Stat. § 528.13. Because the transfer of funds in this case was not made pursuant to § 528.12, the court concluded that the bank's liability is not discharged by the statute.

■ The bank does not dispute that it breached the terms of the certificate and failed to require a proper request for payment. The bank's sole contention on appeal is that under the common law its liability was extinguished because Ada Pasch accepted payment by exercising dominion over the funds. *Cf. Grouf v. State National Bank of St. Louis,* 76 F.2d 726 (8th Cir.1935). The defense of payment is an

---

2. Even if the terms on the certificate only existed for the bank's "benefit," as the dissent maintains, and therefore did not constitute a contract, a bank that pays a certificate of deposit without its surrender and endorsement acts at its peril and may remain liable on the certificate. *Ritland v. Security State Bank,* 257 Iowa 21, 131 N.W.2d 464 (Iowa 1964); *Cohn-Goodman Co. v. People's Savings Bank of Grand Haven,* 203 Mich. 307, 168 N.W. 1042 (1918).

affirmative one, and the burden of proof is on the party asserting it. *Poland v. Gibson*, 190 Neb. 696, 698, 211 N.W.2d 900, 901 (1973). On this issue the trial court held that Pasch did not have or exercise sole control and dominion over the proceeds of the certificate and thus she did not accept payment.

■ We note initially that both parties agreed to submission and determination of this case on summary judgment. They stipulated to the facts presented to the trial court and never suggested, then or now, that material facts are in dispute. In these circumstances, the trial court could assume that there was no further evidence to be considered other than that which was filed by the parties. *See, e.g., Harrison Western Corp. v. Gulf Oil Co.*, 662 F.2d 690, 692 (10th Cir.1981); *cf. First National Bank of Milaca v. Smith*, 445 F.Supp. 1117, 1119 (D.Minn.1977).

The only evidence that Pasch accepted the transfer as payment of the bank's obligation is her failure to object to the letter of February 23, 1983, and her minor, and arguably unintentional, use of the proceeds in the last 20 days of her life. There is no evidence that she accepted the transfer with the understanding that the trust account was no longer in effect; the letter from the bank stated only that proceeds had been deposited into her checking account. Nor is there any evidence that her intent to benefit the respondents had changed. As the trial court noted:

> [W]hen an elderly woman has specifically and affirmatively evidenced her intent to use a revocable trust to provide for the natural objects of her affection and bounty, the bank should be more sensitive to her wishes than to revoke her trust, and in effect create a new one, excluding three-fourths of her beneficiaries. Such a bank should not be able to substitute its intent for hers any more than it could draft a new will without her specific and affirmative action.

■ We agree with the trial court that the bank failed to establish that Pasch knowingly accepted payment. *See also* *McMahon v. German American National Bank of Little Falls*, 111 Minn. 313, 127 N.W. 7 (1910) (payment of a certificate of deposit in violation of the terms of the certificate did not extinguish liability). The bank thus remained liable on the certificate of deposit. Strict adherence to the law in negotiating financial instruments will ensure compliance with the wishes of account holders, protect the rights of heirs, and preclude litigation. *See Hefner v. Estate of Ingvoldson*, 346 N.W.2d 204, 207 (Minn. Ct.App.1984).

## DECISION

The bank failed to show that Pasch accepted payment and thus failed to extinguish its liability to the respondent beneficiaries.

Affirmed.

POPOVICH, Chief Judge (dissenting).

I respectfully dissent:

1. When Ada Pasch purchased the certificate on January 1, 1980, it was her funds and she designated her son and her three grandchildren as beneficiaries. The beneficiaries were not owners but had merely an expectancy of inheritance. She was notified of the maturity of July 1, 1982 by letter. When she did nothing, on February 23, 1983 the bank wrote her that the proceeds were deposited in her checking account. She wrote 75 checks on that account and can be presumed to know the account balances from February 1983 until her death in July. Her son drew three checks on the account before his mother's death and took possession of the remaining funds after her death. How do we know during the period of time between February 1983 and her death that Ada Pasch had not changed her mind regarding terminating the trust relationship? Had she wanted to continue it, she could have created another one after receiving the money in her account. Her son was the surviving joint tenant of that account, how can we say she did not intend that he get whatever was in her account?

2. The certificate language that it will be paid when the certificate is surrendered is for the bank's benefit. It obviously can waive the provision and pay the proceeds to the person who is the holder of the certificate and who originally purchased the certificate. This is what it did when it deposited the proceeds in the purchaser's own checking account. She accepted payment, exercised control over it, and used part of it. The trial court's findings of fact 13 and 14 to the contrary are incorrect in this respect.

3. As said in *Grouf v. State National Bank of St. Louis*, 76 F.2d 726, 730 (8th Cir.1935), "The finding of the court is that the receipt and retention by the Bank of the amount furnished was a payment pro tanto." Here, payment to Pasch's account, retention, and exercise of dominion over it constituted acceptance by her of what the bank did.