George A. SCHAEFER,
Plaintiff-Appellant,

v.

John W. SPENCE and Betty J. Spence,
Defendants–Respondents.

No. 17099.

Missouri Court of Appeals,
Southern District,
Division Two.

July 8, 1991.

Motion for Rehearing or Transfer
Denied July 29, 1991.

Application to Transfer Denied
Sept. 10, 1991.

Mark E. Gardner, D. Patrick Sweeney, Hall, Ansley, Carmichael & Gardner, Springfield, for plaintiff-appellant.

No appearance by respondents.

SHRUM, Judge.

Barbeque sauce developer sued his former business partners alleging breach of contract, conversion, and fraud after the former partners obtained the developer's spice formula and attempted without success to duplicate the sauce. Following a bench trial, the court issued extensive "findings of fact" and denied recovery to the sauce developer. He appeals; we affirm.

## FACTS

In his brief, the appellant George Schaefer adopts the trial court's findings of fact as his statement of facts. From those findings, Schaefer's trial exhibits filed with this court, and the pleadings, the following factual summary emerges.

Schaefer began developing his barbeque sauce about 30 years ago; he made the last major change in 1972. A restaurant cook, Schaefer used his sauce at several Springfield, Missouri, eating establishments. He sold his sauce to customers of restaurants where he was employed and also to a food wholesaler that distributed the sauce to grocery stores throughout southwest Missouri.

Schaefer took great pains to maintain the secrecy of the critical ingredients of his barbeque sauce recipe. Although he did not conceal the contents of the sauce base or the method by which he cooked the sauce, he did not allow others, including fellow employees who helped him prepare the sauce, to learn the identity and proportions of the various spices.[1]

In 1986, while Schaefer was employed at Tiny's Smokehouse, Schaefer met defen-

1. The base of a barbeque sauce generally includes such ingredients as tomato sauce or tomato paste, molasses, and sugar. There was expert testimony that a chef or other experienced cook could experiment with the ingredients listed on a barbeque sauce bottle and duplicate the base with little difficulty. However, it would be "virtually impossible" to duplicate the blend of spices.

dant-respondent John Spence who was a salesman for a candy company. Schaefer and Spence discussed the possibility of Spence's marketing the barbeque sauce for Schaefer. Schaefer gave Spence a price list and sauce samples. The first day Spence test-marketed the sauce, he obtained orders for 24 cases.

In December 1986, Schaefer, John Spence, and defendant-respondent Betty Spence formed a corporation to produce and market Schaefer's sauce. Schaefer was a 50% shareholder in the corporation, Schaefer's Gourmet, Inc., and was responsible for production of the sauce. The Spences were 50% shareholders. John Spence, the corporation's vice-president, was responsible for marketing and sales.

In January 1987, Schaefer arranged for Spicecraft, a St. Louis, Missouri, company that blends spices on a large scale for food companies, to prepare the large amounts of the spice mixture that he anticipated Schaefer's Gourmet, Inc. would need. Before he disclosed his spice formula to Spicecraft, Schaefer obtained a nondisclosure letter from the spice company. The letter was addressed to Schaefer individually at his residence. Apparently, all orders for the spice mixture were sent to Schaefer's Gourmet, Inc. in care of Schaefer at his residence.

Schaefer and the Spences quickly realized the need to expand their production facilities because the demand for the sauce exceeded their limited capacity. Apparently Schaefer and the Spences did not have the necessary capital to expand their operation because they investigated obtaining financing by adding another shareholder or obtaining a bank loan. Schaefer objected to the addition of a shareholder because he wanted to retain ownership of 50% of the company. He balked at a bank loan because the bank required, as a condition of the loan, that Schaefer either make his sauce recipe a corporate asset or disclose it to the bank.

Schaefer and the Spences decided to end their business relationship and, in August 1987, they entered an agreement whereby the Spences acquired all of Schaefer's shares in the corporation and his interest in the corporation's assets. Schaefer also granted the Spences "the right and license, for a period of three (3) years from the Closing Date, to bottle, market and sell food products under the trade name 'Schaefer's Gourmet.'" The contract specifically provided that the barbeque sauce recipe would remain Schaefer's property, and it gave the Spences a 90-day option to acquire the recipe for $50,000 plus a royalty on all sauce sales during the two-year period following exercise of the option.

The option clause provided, in pertinent part:

> The option shall be exercised by written notification to [Schaefer] that the [Spences] desire to purchase his recipe.
>
> . . . .
>
> (b) In the event the [Spences] desire to purchase [Schaefer's] recipe for barbeque sauce, the purchase price for the recipe shall be the following:
>
> (i) Fifty Thousand Dollars ($50,000), payable as follows: Twenty–Five Thousand Dollars ($25,000.00) payable on exercise of the option and receipt of the recipe, and the balance due on or before January 30, 1988;
>
> . . . .
>
> (c) In the event [the Spences] elect to purchase [Schaefer's] recipe, [Schaefer] agrees to instruct [the Spences] on how to prepare the barbeque sauce.

The Spences could not afford to buy the sauce recipe during the 90-day option period. Nevertheless, following a series of seven contacts—by letter, telephone, and personal visit—the Spences were able, by late October or early November 1987, to obtain from Spicecraft a copy of the spice blend formula and 1,000 pounds of the spice mixture.[2] Among the trial exhibits filed with this court is a November 16, 1987, letter from Schaefer's attorney to the

---

**2.** Nothing in the contract between Schaefer and the Spences prohibited the Spences from obtaining the spice blend from Spicecraft. Other than the nondisclosure letter, there is nothing in the record concerning the arrangement between Schaefer and Spicecraft.

Spences demanding they cease using "his barbeque sauce recipe or barbeque spice mixture recipe...." The letter also advised the Spences, "It would appear that you owe Mr. Schaefer at least $50,000 for the recipe pursuant to the August 8, 1987 'Purchase Agreement'. In addition, it would appear that additional damages are recoverable for misappropriation and conversion of the recipe...."

With the matter unresolved, Schaefer initiated this litigation. The suit went to trial on Schaefer's five-count first amended petition which alleged breach of contract, conversion, and fraud and sought actual damages of $50,000 plus punitive damages.

The trial court found that the Spences intended to duplicate Schaefer's sauce or produce a substantially equivalent product but their efforts met with failure. The court noted that the Spences' product contained a base ingredient (water and tomato paste) different from Schaefer's tomato sauce base. In denying recovery to Schaefer, the court stated the following conclusions relevant to Schaefer's two points on appeal:

1. Since [the Spences] never succeeded in duplicating the barbeque sauce recipe, they never exercised dominion over [Schaefer's] property nor denied the ownership of the offered property. [Schaefer is] therefore not entitled to damages under Count I [which alleged the Spences had exercised the option but had refused to pay Schaefer $50,000 plus a sales commission].

....

3. While there are facts which may support [Schaefer's] contention that [the Spences] willfully converted the spice list portion of the recipe, there is no testimony which would support actual damages under Count III [the conversion claim].

In its judgment, the trial court ordered the spice blend formula, which was an exhibit at trial, to be sealed.

3. An inquiry that would be impossible given the absence of the trial transcript from the record.

4. Although the trial court stated its conclusion that "there are facts which may support [Schae-

## ISSUES ON APPEAL AND STANDARD OF REVIEW

This appeal presents two questions: whether the Spences' action in obtaining the spice blend formula constitutes (1) an exercise of their option or (2) conversion. Our review is governed by the principles enunciated in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo.banc 1976). Thus we must affirm the judgment of the trial court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. Schaefer accepts the trial court's recitation of the facts and he limits his complaints on appeal to the trial court's declaration and application of the law. Thus we are not concerned with the weight and sufficiency of the evidence.[3] Our primary concern is the correctness of the result the trial court reached. *Board of Regents v. Harriman*, 792 S.W.2d 388, 393 (Mo.App.1990). We will sustain the judgment if the result was correct on any tenable basis. *Strunk v. Hahn*, 797 S.W.2d 536, 538 (Mo.App.1990).

## ANALYSIS AND DECISION

■ In point one, Schaefer alleges the trial court erroneously concluded the Spences did not exercise their option to acquire the barbeque sauce recipe "because the trial court erroneously found that [the Spences'] success in using the recipe was an element of [Schaefer's] breach of contract action." Schaefer argues the Spences exercised their option by "wrongfully"[4] acquiring the spice blend formula from Spicecraft; he asserts their degree of success in duplicating his sauce is irrelevant.

■ An option has been described as "no more than a continuing offer on the part of the optionor to sell...." *Keith v. Tucker*, 483 S.W.2d 430, 435 (Mo.App.1972). Generally, acceptance of an option must be in accordance with the terms of the option

fer's] contention that [the Spences] willfully converted the spice list portion of the recipe," the court did not describe the Spences' acquisition of the spice blend formula as "wrongful."

and cannot be made in some manner contrary to the method provided. *Frey v. Yust,* 516 S.W.2d 321, 323–24 (Mo.App. 1974). The contract between Schaefer and the Spences specified the option was to be exercised by the Spences' "written notification to [Schaefer]" of their "desire to purchase his recipe."

A cursory review of appellate opinions dealing with litigation over option contracts suggests most such lawsuits are initiated by optionees, claiming proper exercise of the options and alleging breach of contract by the optionors. Thus it is not surprising that Schaefer cites no case authority directly supporting the proposition that an optionee's acquisition, from a third party, of the subject matter of an option (or a portion of the subject matter), constitutes an exercise of the option when the option itself specifies the manner of exercise.

Schaefer cites several opinions that state general principles of law that appear, at first blush, to support his position. However, the cases he cites are so different factually they are not persuasive. Schaefer also directs our attention to two Restatement provisions. From the *Restatement of Contracts* § 72 (1932):

> (2) Where the offeree exercises dominion over things which are offered to him, such exercise of dominion in the absence of other circumstances showing a contrary intention is an acceptance. If circumstances indicate that the exercise of dominion is tortious the offeror may at his option treat it as an acceptance, though the offeree manifests an intention not to accept.

From the counterpart *Restatement (Second) of Contracts* § 69 (1981):

> (2) An offeree who does any act inconsistent with the offeror's ownership of offered property is bound in accordance with the offered terms unless they are manifestly unreasonable. But if the act is wrongful as against the offeror it is an acceptance only if ratified by him.

We find no case in which a Missouri state appellate court has adopted either of the above quoted subsections of the Restatement.[5] Schaefer argues, in effect, we should adopt one (or both) of the above quoted Restatement provisions and apply it to his benefit. Schaefer's argument convinces us to do neither. We rule Point I against Schaefer.

■ In his second point on appeal, Schaefer contends the trial court erroneously denied him recovery on his conversion theory. His argument wholly overlooks a threshold inquiry: whether the spice blend formula is a species of property susceptible to conversion. We hold it is not.

■ In modern law conversion is "an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." *Breece v. Jett,* 556 S.W.2d 696, 709 (Mo.App.1977), *quoting Restatement (Second) of Torts* § 222A (1965). The law of conversion is concerned with possession, not title. *Lacks v. R. Rowland & Co.,* 718 S.W.2d 513, 517 (Mo.App.1986). The "hoary limitation" that only tangible personal property could be converted has been "discarded to some extent by all of the courts." *Prosser and Keeton on the Law of Torts* § 15 at 91 (5th ed.1984).

■ In Missouri, for example, there can be a conversion where there is a wrongful withholding by a broker of stock certificates (*Lacks,* 718 S.W.2d 513); a diversion of funds paid to another for a specific purpose (*Biermann v. Gus Shaffar Ford, Inc.,* 805 S.W.2d 314, 318 (Mo.App.1991)); and the use of a trade name by one who by contract relinquished his right to use the name in the grocery business in the St. Louis area (*Schnucks Twenty–Five, Inc. v. Bettendorf,* 595 S.W.2d 279, 285 (Mo.App. 1979)). However, conversion does not lie for the appropriation of an idea. *Breece,* 556 S.W.2d at 709, *citing Norman Schu-*

---

5. In *Grouf v. State Nat'l Bank of St. Louis,* 76 F.2d 726 (8th Cir.1935), the court adopted § 72(2) of the First Restatement. 76 F.2d at 730. *Grouf* is not persuasive because of the factual dissimilarities.

*man Interiors, Inc. v. Sacks,* 479 S.W.2d 200, 202–03 (Mo.App.1972).

Despite the relatively recent expansion of the types of property that are subject to conversion, limits remain. Schaefer contends the Spences converted the spice blend formula. He overlooks the limits on the types of property that can be converted. The Spences obtained a copy of the formula from Spicecraft; Schaefer retains the same information. Schaefer cites to us no Missouri appellate court opinion that expands conversion to embrace the appropriation of a formula, and we find no such authority. The status of conversion in Missouri appears aptly summarized by the following passage from *Prosser and Keeton:*

> The American economy has experienced an increasing use of intangible ideas. It has been urged that conversion should expand to redress interference with all properties—tangible or intangible. But it would seem preferable to fashion other remedies, such as unfair competition, to protect people from having intangible values used and appropriated in unfair ways.

*Prosser and Keeton,* at 92. We are not convinced we should expand conversion to encompass the appropriation of a formula. We rule Point II against Schaefer.

Judgment affirmed.

FLANIGAN, C.J., concurs in full with respect to Point I, and concurs in the result with respect to Point II.

PARRISH, P.J., concurs.