TWIN PORTS CONVALESCENT, INC., et al., Appellants,

v.

MINNESOTA STATE BOARD OF HEALTH, Respondent,

Carl Bergl and Glen Michael, d.b.a. Duluth Med-A-Van Ambulance Service, Respondents.

No. 46803.

Supreme Court of Minnesota.

Aug. 5, 1977.

Fryberger, Buchanan, Smith, Sanford & Frederick and Harold A. Frederick, Duluth, for appellants.

Warren Spannaus, Atty. Gen., John A. Breviu, Sp. Asst. Atty. Gen., Minneapolis, for Minn. St. Bd. of Health.

Hanft, Fride, O'Brien & Harries and Tyrone P. Bujold and John D. Kelly, Duluth, for Bergl and Michael.

Heard before PETERSON, MacLAUGHLIN, and SCOTT, JJ., and considered and decided by the court en banc.

PETERSON, Justice.

Plaintiffs, Twin Ports Convalescent, Inc. and G.C.A.S., Inc., are Minnesota corporations which have operated ambulance services in Duluth, Minnesota, for several years. On June 16, 1975, defendant State Board of Health (board) issued to defendants Carl Bergl and Glen Michael (hereinafter "defendants") a license to operate an ambulance service in Duluth. Plaintiffs seek (1) a declaratory judgment that defendants' license is invalid because no public hearing was held, as required by Minn.St. 144.802, to determine whether the public conve-

nience and necessity require an additional ambulance service in Duluth; and (2) a permanent injunction restraining defendants from operating an ambulance service in Duluth until they demonstrate at a public hearing the requisite public convenience and necessity. The trial court held that defendants' license was validly issued without a public hearing and dismissed plaintiffs' complaint. We reverse.

Resolution of this controversy centers upon the meaning of Minn.St. 144.802, which provides:

"No operator shall operate an ambulance service within this state unless it possesses a valid license to do so issued by the state board of health. The cost of the license shall be in an amount prescribed by the board pursuant to section 144.122. Licenses shall expire and be renewed as prescribed by the board pursuant to section 144.122. The state board of health shall *not* issue licenses for the operation of *newly established* ambulance service in the state *unless* the service meets the standards required by sections 144.801 to 144.806 *and the applicant has demonstrated to the satisfaction of the state board of health at a public hearing that the public convenience and necessity require the proposed ambulance service.*" (Italics supplied.)

The italicized language was added to the statute by amendment in 1973. L.1973, c. 220, § 3. Previously, the only prerequisite to issuance of a license was compliance by the applicant with certain standards embodied in Minn.St. 144.801 to 144.806 and relating primarily to equipment.

The chain of events giving rise to the instant controversy commenced on July 25, 1974, when defendant Bergl, who at that time operated no ambulance service anywhere in the state, applied to the board for a license to operate an emergency and nonemergency ambulance service in Duluth. A public hearing, as required by Minn.St. 144.-802, was held in Duluth on September 17, 1974. Because most of Bergl's evidence of "public convenience and necessity" related to nonemergency service, Bergl amended his application during the course of the hearing to delete his request for emergency service authorization. On December 12, 1974, the board adopted the recommended conclusion of the hearing officer that public necessity and convenience did not require an additional nonemergency ambulance service in Duluth. Accordingly, the board denied Bergl's application.

Several months later, in May of 1975, defendants purchased the North Star Ambulance Service owned by Victor Vainovskis and located in Minneapolis. The sale was conditioned upon "transfer" of Vainovskis' license to defendants.

Vainovskis was employed full time as an assistant trainer and equipment manager at Macalester College. For many years during his spare time he had been involved as a volunteer in providing standby ambulance service at special events such as parades and sports contests. His ambulance was not available generally to the public, and his use of it was seasonal; in fact, from November 1974 to April 1975, the ambulance was on blocks in his back yard. At the time of the sale, Vainovskis had a license for emergency service and some weeks previously had arranged to have 24-hour backup service because the statute at that time did not authorize limited services such as that which Vainovskis operated.[1]

Contemporaneous with their purchase of Vainovskis' North Star Ambulance Service, defendants applied to the board for a license to operate the service. On May 21, 1975, the board, without a public hearing,

1. Minn.St.1969, § 144.804, subd. 3, provided that "[a]ll ambulances offering emergency service, whether publicly or privately owned, shall offer ambulance service 24 hours per day every day of the year."

In 1976, the provision was amended by the addition of the following sentence: " * * * An ambulance operated by a nonprofit entity and limiting its operation exclusively to providing emergency ambulance service by contract for specific events and meetings need not offer emergency service 24 hours per day every day of the year but shall meet all other legal standards for ambulance services offering emergency service." L.1976, c. 202, § 1.

issued defendants a license for emergency service. Three weeks later, defendants advised the board by letter that they intended to open a "branch office" to provide ambulance services in Duluth. On June 16, 1975, the board issued defendants a license for emergency and nonemergency services in Duluth in the name of North Star Ambulance Service, d.b.a. Duluth Med-A-Van Ambulance Service. No public hearing was held.

The board maintains that its actions were proper. However, it did not take an active role in the trial court proceedings, nor did it file an appeal brief, in the belief that the other parties have adequately presented the issues to this court. Plaintiffs argue on appeal that defendants' license to operate an ambulance service in Duluth is invalid for either of two reasons: (1) Vainovskis had no "ambulance service" to transfer to defendants and thus their initial license, the basis for the second license, was improperly issued; (2) even if defendants had a valid license to operate Vainovskis' service, that license did not authorize them to operate a service in an area outside the Twin Cities. We find plaintiffs' latter argument persuasive and need not reach their alternative argument.

■ 1. Before reaching the merits, we address defendants' contention that plaintiffs, "whose only interest is in keeping down the number of competitors," have no standing to challenge the validity of a license issued to a competitor. We hold that plaintiffs do have standing to bring this action whether the test to be applied is one of "injury in fact"[2] or one of injury in fact plus an interest arguably among those sought to be protected by the statute in question.[3]

■ Injury in fact is shown by plaintiffs' allegations that their Duluth business generated lower profits since the board issued defendants a license and defendants commenced operating an ambulance service in Duluth. Under plaintiffs' interpretation of Minn.St. 144.802, their interest in operating a profitable business is arguably within those sought to be protected by the statute. They assert that Minn.St. 144.802, in recognition of the inelastic demand and fixed costs characteristic of the ambulance service business, was intended to preserve the quality of service offered to the public by protecting existing services from competition in the absence of a showing that an additional service is in fact needed. Defendants argue that the statute exists to insure that ambulance services are properly equipped and operated. This is a question addressed to the merits and not determinative of plaintiffs' standing to litigate that question. See, *Assn. of Data Processing Serv. Org. supra* ; *Chicago v. Atchison, Topeka & Sante Fe R. Co.*, 357 U.S. 77, 83, 78 S.Ct. 1063, 1067, 2 L.Ed.2d 1174, 1180 (1958). Plaintiffs have shown an interest *arguably* among those intended to be protected by the statute.

■ Finally, in support of our holding that plaintiffs have standing to bring this action, we reiterate that the underlying purpose of the doctrine of standing and the various tests which it has spawned is "to guarantee that there is a sufficient case or controversy between the parties so that the issue is properly and competently presented to the court." *Minn. State Bd. of Health v. City of Brainerd*, Minn., 241 N.W.2d 624, 628 (1976). The tests have served their function well in this case, for plaintiffs have vigorously and competently pursued this action. The board shares this view, as it stated when declining to file an appeal brief.

2. The substantive issue before us in this case is: What is a "newly established ambulance service" for which a license may not be issued under Minn.St. 144.802 in the absence of a public hearing and determination of public convenience and necessity.

---

**2.** See, *Snyder's Drug Stores v. Minnesota Bd. of Pharm.*, 301 Minn. 28, 221 N.W.2d 162 (1974); Davis, Administrative Law Treatise, § 22.21, p. 784 (Supp.1970).

**3.** See, *Assn. of Data Processing Serv. Org. v. Camp*, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970).

Plaintiffs argue that "ambulance service" necessarily connotes a particular geographic service area and that the statute requires a public hearing whenever a service operating in one area moves to another as well as whenever a license is sought for a service new to the state. Defendants argue that the hearing requirement applies only to the initial application for service new to the state and that once a license has been granted, the licensee may move freely throughout the state.

Defendants' argument is supported by certain statutory language as interpreted by the attorney general in an opinion issued relative to this matter, Op.Att.Gen. 225–a (August 18, 1975), and by the board's practice of not requiring a public hearing when an ambulance service operating in one area moves to another. Plaintiffs' interpretation, on the other hand, is supported by the board's own understanding of the purpose of the public hearing requirement as reflected in the procedures it has adopted to regulate those public hearings which are mandated by its interpretation of the statute, and by the apparent purpose of such a requirement.

The attorney general opinion is based primarily upon the observation that the only geographical area explicitly mentioned in c. 144 is the state. "License" is defined by Minn.St. 144.801, subd. 4, to mean "authority * * * for the operation of an ambulance service *in the state of Minnesota.*" (Italics supplied.) Minn.St. 144.802 speaks in terms of "newly established ambulance service *in the state.*" (Italics supplied.) The "in the state" language upon which the opinion heavily relies predated, and was not changed by, the 1973 amendment requiring a public hearing. No provision in Minn.St. 144.801 to 144.807 "ties an ambulance license to a particular area," nor "requires that a separate license be obtained by a licensed operator before entering a new service area." Op.Atty.Gen. 225–a (August 18, 1975).

The board has not construed Minn.St. 144.802 to require a public hearing before licensing a service new to a particular area, but only to require a hearing before issuance of a license for service new to the state. The procedures adopted by the board to regulate such hearings, however, demonstrate the board's understanding that "ambulance service" in the context of a requirement of public convenience and necessity necessarily connotes an area limitation. The applicant is required to publish notice of the hearing in newspapers "serving the proposed service area." The applicant must present information defining the "proposed service area"; estimating the anticipated volume of service and the proposed response time; and describing other services "presently operating in the proposed service area." The applicant must also present statements from public officials in the proposed service area indicating that public convenience and necessity require the proposed ambulance service.

Various parties in addition to plaintiffs submitted letters of opposition at the 1974 hearing on defendants' proposed Duluth service. All of them were concerned that the business of the two currently operating services, one of which was already subsidized by the city of Duluth, would be decreased, thus requiring a greater subsidy if not also causing decreased quality of service. Consistent with these expressed concerns, the hearing examiner, in recommending that the license be denied, concluded:

"Ambulance services tend to operate within a limited market environment. The addition of a third ambulance service, which is licensed to provide non-emergency service, will not *substantially* increase the total amount of such service which is currently provided in the area. If the applicant's estimate of initial volume is accurate, the new service will substantially reduce the volume of non-emergency service which is currently provided by one or both of the existing operators. There is no firm evidence in the record to support the contention that the addition of a third competitive service (in a limited market environment) will result in an overall reduction in rates; and the potential clearly exists for this situation to

cause an increase in rate schedules and/or local subsidies."

We interpret Minn.St. 144.802 to manifest a legislative intention to protect the public welfare against deleterious competition in the ambulance services field.[4] The provision embodies a legislative determination that the ambulance service business is one in which the public welfare is not promoted by free enterprise.[5] Ambulance service is essential to a community. It is also a service for which demand is inelastic and expenses largely fixed. Where the demand is insufficient to support additional services, either quality is sacrificed or rates and public subsidies increased, but in either event, the taxpayer-consumer suffers.

Given the purpose of protection against deleterious competition, it does not make sense that only a first-time licensee need demonstrate public convenience and necessity at a public hearing. Under such a construction, a licensee could prove public necessity and convenience in one area then leave it to compete in another. The statutory proscriptions could be avoided altogether by agreements with established services under which "branch offices" would be opened. This, essentially, is what occurred here, 6 months after a determination that public convenience and necessity did not require a third service. We will not construe the statute to reach an absurd result nor one that contravenes the manifest intention of the legislation. Minn.St. 645.16; 645.17(1).

Defendants argue that the court should defer to the practical construction of the statute by the board, the agency authorized to give the statute effect. This court has ruled, however, that even longstanding administrative procedures are not binding if erroneous or contrary to plain meaning. *Ingebritson v. Tjernlund Mfg. Co.*, 289 Minn. 232, 237, 183 N.W.2d 552, 554 (1971). The board's construction of the statute is not particularly long standing. Moreover, its application of the statute to situations involving the introduction of service into a new area is erroneous as well as inconsistent with its own recognition, in the context of hearings on service new to the state, that the provision is intended to protect the quality of service by prohibiting new competition where the service area cannot support it.

We hold, accordingly, that the board should not have issued defendants a license to operate an ambulance service in Duluth without first determining from evidence adduced at a public hearing that the public convenience and necessity required the additional service.

We remand this case to the trial court to determine whether defendants should be enjoined from operating their ambulance service in Duluth until such time as they demonstrate at a public hearing that public convenience and necessity require an additional emergency or nonemergency ambulance service.[6] If the trial court denies the

---

4. We find unpersuasive defendants' contention that the purpose of the requirement that public convenience and necessity be demonstrated at a public hearing is to ensure that new ambulance services be properly equipped and operated. That purpose is embodied in Minn.St. 144.804 and 144.805 which establish equipment and operation standards that must be met before a license will be issued. The public hearing requirement of Minn.St. 144.802 is an additional and independent prerequisite to the issuance of a license.

5. Minn.St. 144.802 can be compared in this respect with the "public convenience and necessity requirement" and the more explicitly recognized legislative concern for wasteful competition embodied in Minn.St. 145.71 to 145.83, relative to certificates of need for health-care facilities; Minn.St. 221.071, relative

to issuance of certificates to regular route common carriers; and Minn.St. 45.07, relative to issuance of bank charters.

6. In exercising its equitable jurisdiction, the trial court should, of course, take into consideration the substantial investments made by defendants in reliance upon board practice and the attorney general's opinion, and should consider whether greater harm would result to the enjoined party if the injunction were to issue than would result to the complaining party should the injunction be denied. By recognizing the equities appropriately considered in the determination of whether to issue a temporary injunction pending the public hearing, we intimate nothing with respect to whether or not the public convenience and necessity require defendants' ambulance service.

injunction, its denial shall be conditioned upon defendants' prompt application for a public hearing, and we would expect that the board would expedite the hearing process. Should defendants fail to promptly pursue the administrative procedures, plaintiffs may invoke the trial court's continuing jurisdiction for an order enjoining defendants' operation.

Reversed and remanded.