**Robert L. SCHMIDT, Special Administrator for the Estate of Beryl M. Schmidt, and on behalf of a class of all persons similarly situated, Respondents,**

v.

**APPLE VALLEY HEALTH CARE CENTER, INC., Appellant.**

Nos. C8–90–37, C0–90–646.

Court of Appeals of Minnesota.

Sept. 11, 1990.

Review Denied Oct. 25, 1990.

Samuel D. Orbovich, Susan M. Schaffer, Broeker, Geer, Fletcher & LaFond Ltd., Bloomington, and Howard A. Knutson, Knutson, Hird, Ilstrup & Knutson, Burnsville, for appellant.

Richard L. Wolff, Law Office of Richard M. Bell, Blooming Prairie, and William E. Ahlberg, Ahlberg Law Firm, Ltd., Apple Valley, for respondents.

Considered and decided by HUSPENI, P.J., and SCHUMACHER and DAVIES, JJ.

## OPINION

DAVIES, Judge.

Apple Valley Health Care Center challenges the trial court's determination that

it is liable to a class of plaintiffs for failing to retroactively equalize rates paid by private paying residents to those paid by the state on behalf of medical assistance recipients. We affirm.

## FACTS

Appellant Apple Valley Health Care Center opened on June 29, 1983. It participated in medical assistance programs in which the state reimbursed the home for residents who received public assistance. The state required appellant, as a new nursing home, to set interim rates to use in reimbursing appellant for public assistance recipients. These rates were $75 a day for skilled nursing care and $65 a day for intermediate care. The law directed appellant to charge private paying residents these same interim rates, which remained in effect until September 30, 1985. The state Department of Human Services then established, from cost reports filed with the state as required by law, "settle-up" rates for appellant. The state compared the settle-up rates with the interim rates. Because the settle-up rates were $5 to $10 per day lower than the interim rates, the state received $530,597.22 in refund payments from appellant. Appellant made no such refunds to private paying residents.

Respondent, Robert Schmidt as Special Administrator for the Estate of Beryl Schmidt, requested that appellant refund the differential. Beryl Schmidt resided at the home during all relevant periods and received no public assistance for the costs of her stay. After appellant refused, respondent filed a complaint in December 1986 alleging appellant, by failing to refund the differential to private paying residents, charged private paying residents more than it charged public assistance residents. Respondent charged this action violated Minn.Stat. § 256B.48, subd. 1 (1986) (nursing home rate equalization law).[1] Respondent sought treble damages and certification of the suit as a class action. The trial court certified the class on May 17,

1987 to include all private paying residents of the home between June 29, 1983 and September 30, 1985, the 27-month period during which the interim rates were in effect. The class contains approximately 200 members.

The court granted respondent's motion for partial summary judgment on the issue of liability on June 24, 1988. In the order for judgment, the court found the facts as described above. It concluded there were no issues of material fact and that each member of the class was entitled to,

a full refund from the defendant of the differential existing between the initial payments made under the interim Medical Assistance rates established for defendant's operation * * * for the period June 29, 1983, to September 30, 1985 * * * and the lower settle-up payments made under the rates established by the State after a history-of-operations period had been established, together with treble damages pursuant to the statute.

The court ordered further discovery to enable determination of the amount of damages. In March 1989, pursuant to respondent's motion, the court ordered the Department of Human Services (DHS) to audit appellant's records. Specifically, the court required DHS to provide the names of all residents with information including dates of stay and method of payment.

The court granted respondent's motion for final summary judgment on November 29, 1989. In its order for judgment, the court awarded attorney fees of $60,424.73 plus 20% of damages actually paid to class members. The court further concluded that appellant's practice of charging private paying residents for the dates of discharge and admission while only charging public assistance residents for the date of admission violated section 256B.48, subd. 1. Several days later, the court amended its order for judgment to add a damage award of $690,120.45. Thus, the total judgment is $750,545.18. In reaching this figure, the court apparently relied upon the data DHS

---

**1.** Respondent in its complaint also relied on Minn.Stat. § 363.03, subd. 2 (1986) (prohibition against discrimination based on receipt of public assistance), but thereafter the action was pursued in primary reliance on Minn.Stat. § 256B.48, subd. 1 (1986).

provided and information in the record, but the court did not state the basis for its calculation. Judgment was entered December 7, 1989.

On December 22, 1989 respondent moved to clarify the award. On January 4, 1990, appellants filed a notice of appeal from the December 7 judgment. On February 16, the court entered an amended order and findings in which it merely stated the basis for its damage award: base damages (actual overcharges) of $151,980.61, damages for charging private paying residents for the day of discharge of $6,485.00, damages for insurance-paid residents of $5,495.20 and interest at 7.86% of $66,079.34, for a total of $230,040.15. The final award is treble that amount. Finally, the court provided a rationale for its ruling that residents insured by private insurance companies are private paying residents.

Appellant appealed from the February order on March 22, and this court consolidated the appeals on March 27.

### ISSUES

1. Did the trial court correctly interpret the nursing home rate equalization law?

2. Did the trial court correctly find there are no genuine issues of material fact?

3. Was the court's award of attorney fees within its discretion?

### ANALYSIS

In this appeal from a summary judgment, we must decide whether the trial court correctly interpreted the law and whether any genuine issues of material fact exist. *Betlach v. Wayzata Condominium,* 281 N.W.2d 328, 330 (Minn.1979). We view the evidence favorably to the nonmoving party. *Nord v. Herreid,* 305 N.W.2d 337, 339 (Minn.1981). Appellant argues the court misinterpreted applicable law and ignored material issues of fact. Appellant also argues the court abused its discretion in awarding attorney fees.

The February order to amend the judgment occurred after the filing of the appeal. Only the December 7 judgment and

amended judgment is reviewable here. *See Amatuzio v. Amatuzio,* 431 N.W.2d 588, 589 (Minn.App.1988), *pet. for rev. denied* (Minn. July 27, 1989) (filing of appeal before decision on motion to amend findings divests trial court of jurisdiction). Although the post-appeal amended judgment is without effect, this court may take "cognizance of it for the insight it affords." *Evans v. Blesi,* 345 N.W.2d 775, 780 (Minn. App.1984), *pet. for rev. denied* (Minn. June 12, 1984). Here, the February order clarified the basis for the damage calculation, and this court has considered it for that limited purpose only.

### (A) *Interpretation of the Law*

Appellant argues the trial court made four errors in interpreting the applicable law. First, the court required retroactive refunds for private paying residents. Second, it included residents whose insurance companies paid the care costs within the definition of private paying residents. Third, the court required appellant to refund charges to private paying residents for the dates of discharge. Fourth, the court awarded treble damages.

#### (1) Retroactive Refunds

The court ruled that appellant must refund the differential between the amounts it charged each private paying resident between June 29, 1983 and September 30, 1985 and the amount the state reimbursed the home for each medical assistance recipient during that period. Under the regulations governing nursing homes, a home must file cost reports with the state for the report year, which runs October 1 to September 30. Minn.Stat. § 256B.421, subd. 12 (1988); Minn. R. 9549.0020, subpt. 41 (1989). After receiving the report, DHS sets the rate for the following rate year, which runs July 1 to June 30. Minn.Stat. § 256B.421, subd. 11 (1988); Minn. R. 9549.0020, subpt. 36 (1989). The process of setting this rate is called the "desk audit," Minn. R. 9549.0020, subpt. 19 (1989), and the result is called the "desk audit rate."

Appellant care center opened June 29, 1983. DHS at that time set interim rates

for reimbursing appellant for medical assistance recipients pursuant to Minn.Stat. § 256B.431, subd. 4 (Supp.1983). These rates remained in effect until DHS, on the basis of cost reports, calculated the "retroactive cost settle-up" rates. Minn.Stat. § 256B.431, subd. 4. The settle-up rates, which were calculated after September 30, 1985, were lower than the interim rates, so DHS required appellant to refund the difference for medical assistance recipients.

When appellant refused to refund the differential to each private paying resident, respondent commenced this action. The action is based on Minn.Stat. § 256B.48, subd. 1(a) (1986), which gives a private paying resident, or the resident's legal representative, a cause of action for civil damages against a nursing home that charges rates in violation of the law. The statute is violated when the home charges private paying residents rates which exceed those which the state approves for medical assistance recipients, as determined by the "prospective desk audit rate." *Id.*

Here, the refund to the state pursuant to the determination of the "retroactive cost settle-up" rates caused appellant's charges to private paying residents to become higher than its charges to medical assistance recipients. Thus, the question here is whether rates set by the "retroactive cost settle-up" are included in rates determined by the "prospective desk audit."

■ The trial court correctly interpreted section 256B.48, subd. 1(a) to require a retroactive refund. The statute displays a clear legislative intent to require nursing homes to charge private paying residents the same as medical assistance recipients. *See Good Neighbor Care Centers, Inc. v. Department of Human Services,* 428 N.W.2d 397, 401 (Minn.App.1988), *pet. for rev. denied* (Minn. Oct. 19, 1988); *Highland Chateau v. Minnesota Department of Public Welfare,* 356 N.W.2d 804, 808 (Minn.App.1984), *pet. for rev. denied* (Minn. Feb. 6, 1985). Here, private paying residents paid more than did the state on behalf of medical assistance recipients. The rate equalization law was designed to prevent this type of disparity.

Appellant argues the trial court's interpretation ignores the plain meaning of the word "prospective." But, the word must be read in the context of the overall statutory scheme. *See* Minn.Stat. § 645.17 (1988). The term "prospective desk audit" is a name given by the legislature to the result of a calculation. Usually, this calculation is only relevant to future rates. However, in the circumstances of a new nursing home beginning operations, the calculation will cause an adjustment in previous rates. To comply with the overall intent of the statute, the adjustment then must apply to private paying residents as well as medical assistance recipients.

Appellant also argues that the trial court's ruling upsets contractual relations. This argument ignores the fact that private parties cannot contract to avoid the provisions of applicable laws. The statute is unalterably part of the contract. This argument is also defeated by language in the contract between appellant and its residents. The portion of the contract which sets the rate explicitly contemplates the possibility of a refund from the interim rate, "[i]n the event the prospective desk audit rate by [DHS] is less." Thus, while this action was not based on the contract, the contract language does show that appellant foresaw the possibility of a refund.

(2) Inclusion of Insurance–Paid Residents in the Class

■ The trial court included within the class residents whose insurance companies paid care costs. Appellant argues this ruling was error because these residents suffered no damages and because they do not fit within the statutory definition of private paying residents. The statutory definition of a private pay resident is one who "is not a medical assistance recipient and whose payment rate is not established by another third party, including the veterans administration or medicare." Minn.Stat. § 256B.421, subd. 10 (1988). As the court reasoned in its amended findings, insurance companies do not establish the rate their customers pay for nursing home care. Instead, they pay the rate set by the home.

The statutory definition includes residents whose care is insured.

### (3) Refund of Charges for Date of Discharge

■ The trial court awarded damages stemming from appellant's charges to private paying residents for the date of discharge as well as the date of admission. Appellant argues this is erroneous because the law in effect at the time allowed it to charge for both dates. This argument ignores the statutory requirement that homes charge all patients the same. It is undisputed that, while appellant charged private pay residents for both dates, it charged medical assistance residents for only one. The refund for the overcharges must cover the extra day charges.

### (4) Treble Damages

■ Appellant contends the court erred by awarding treble damages. The statute provides,

The damages awarded *shall* include three times the payments that result from the violation, together with costs and disbursements, including reasonable attorneys' fees or their equivalent.

Minn.Stat. § 256B.48, subd. 1(a) (1988) (emphasis added). Appellant argues this court should read a good-faith defense into this section. In the face of the mandatory language, there is no authority to do so. Even if we were to do so, the record does not show good faith on appellant's part. Despite the clear intent to equalize rates contained in the statute and the language of its own contract, appellant failed to give residents notice of their possible claim and refused either to make the refunds when requested or to pay them into escrow during the pendency of this action.

### (B) *Propriety of Summary Judgment*

■ The trial court found there were no genuine issues of material fact. Appellant contends, first, that the history of the Department of Human Services' interpretation of the law presents a genuine issue of material fact. Appellant claims it relied upon DHS employees' representations in its decision not to refund and that cross-examination would reveal inconsistent interpretations by DHS. The interpretation of a statute is a question of law, not of fact. The court's interpretation of the statute undoubtedly is a result of its own judgment. In addition, when a motion for summary judgment is made and properly supported, the other party has not raised a genuine issue of fact unless it countered with specific facts. Minn.R.Civ.P. 56.05; *Continental Sales and Equipment Co. v. Town of Stuntz*, 257 N.W.2d 546, 550–51 (Minn. 1977). Speculation regarding evidence which might be developed at cross-examination is insufficient to raise a genuine issue of material fact. *Rosvall v. Provost*, 279 Minn. 119, 124, 155 N.W.2d 900, 904 (1968).

Appellant also contends there were genuine issues of fact regarding the calculation of damages. Appellant did not object to the court's decision to rely on DHS to determine damages. Having failed to present the issue to the trial court, appellant cannot raise it here.

The trial court correctly found there were no genuine issues of material fact.

### (C) *Award of Attorney Fees*

■ The rate equalization law requires the court to award "reasonable attorneys' fees" in addition to the award. Minn.Stat. § 256B.48, subd. 1(a). The court awarded respondent $60,424.73 plus an additional fee of 20% of the class award payable from the award and "proportionally from each member thereof." Appellant does not contest the reasonableness of the base award; rather, it objects to the 20% enhancement. Respondent contends that appellant lacks standing to make such an argument. Standing usually requires that a party suffer an "injury in fact" before it may bring an action. *See Twin Ports Convalescent, Inc. v. Minnesota State Board of Health*, 257 N.W.2d 343, 346 (Minn.1977). Here, appellant will not suffer any injury from the court's award of 20% of the class award as attorneys' fees. Accordingly, appellant lacks standing to raise the issue.

■ Although appellant lacks standing to challenge the award, this court does possess discretionary review powers which would allow it to review the attorney fee award. *See* Minn.R.Civ.App.P. 103.04 ("interest of justice" jurisdiction). In cases where the court has abused its discretion by awarding excessive fees, this court may exercise its jurisdiction to prevent the award from being insulated from review. Despite its unusual nature, this award is not such a case. Respondent's counsel achieved success for the class and, as the trial court noted, each class member will receive more than double the actual damages suffered. *See Specialized Tours, Inc. v. Hagen,* 392 N.W.2d 520, 541–43 (Minn.1986) (degree of success is key factor in attorney fee awards).

## DECISION

The trial court correctly interpreted the rate equalization law, properly entered summary judgment, and did not abuse its discretion in awarding attorney fees. We affirm its rulings.

Affirmed.