In the MATTER OF the License Application of ROCHESTER AMBULANCE SERVICE, A DIVISION OF HIAWATHA AVIATION OF ROCHESTER, INC., d/b/a Rochester Aviation.

No. C4–92–2131.

Court of Appeals of Minnesota.

May 11, 1993.

Donald C. Willeke, Willeke & Daniels, Minneapolis, for Relator Rochester Ambulance Service.

Hubert H. Humphrey, III, Atty. Gen., Richard A. Wexler, Asst. Atty. Gen., St. Paul, for respondents Minnesota Dept. of Health; Marlene E. Marschall, Com'r of Health.

Harold A. Frederick, Michael Cowles, Fryberger, Buchanan, Smith & Frederick, P.A., Duluth, for intervenor/respondent Gold Cross Ambulance Service, Inc.

Considered and decided by AMUNDSON, P.J., and CRIPPEN and DAVIES, JJ.

## OPINION

AMUNDSON, Judge.

Relator Rochester Ambulance Service argues the Commissioner of Health erred in denying its application to provide specialized ground ambulance service.

## FACTS

Relator Rochester Ambulance Service, a for-profit corporation, operates a licensed air ambulance service which transports patients to and from the Mayo Clinic and area hospitals. Rochester Ambulance filed an application with the Minnesota Department of Health to operate a ground ambulance service so that it could also transport air ambulance patients directly to and from the Clinic and area hospitals. The proposed service would provide only non-emergency service. Rochester Ambulance did not propose to offer any first responder or emergency services to the general public.

Respondent Gold Cross Ambulance Service, Inc. (Gold Cross) petitioned to intervene and opposed Rochester Ambulance's license application. Gold Cross is the only licensed provider of ground ambulance service in the Rochester area and provides both non-emergency and emergency ambulance services.

Following a public hearing, the administrative law judge determined that Rochester Ambulance met all the statutory criteria and recommended to the Commissioner of Health that the license be granted. The Commissioner declined to follow the recommendation and concluded that Rochester Ambulance failed to establish a need for service not currently being met by Gold Cross. By a writ of certiorari, Rochester Ambulance challenges the Commissioner's order.

## ISSUES

1. Did the Commissioner of Health err in determining that Rochester Ambulance failed to prove its proposed ground ambulance service was needed?

2. Is the ambulance licensing statute, Minn.Stat. § 144.802 (1990) as applied to Rochester Ambulance, preempted by the Federal Aviation Act, 49 U.S.C.App. § 1305(a)(1) (1988)?

## ANALYSIS

No one may operate an ambulance service in Minnesota unless a valid license has been issued by the Commissioner of Health. Minn.Stat. § 144.802, subd. 1 (1990). Prior to issuance of a license, the applicant must file an application for a license with the Commissioner of Health. *Id.*, subd. 3(a) (1990). An administrative law judge must then hold a public hearing. *Id.*, subd. 3(d).

The ALJ must review and comment upon the application and make written recommendations as to its disposition to the Commissioner. *Id.*, subd. 3(g) (1990).

In making the recommendations, the administrative law judge shall consider and make written comments as to whether the proposed service * * * is *needed*, based on consideration of the following factors:

(1) the relationship of the proposed service * * * to the current community health plan;

(2) the recommendations or comments of the governing bodies of the counties and municipalities in which the service would be provided;

(3) the deleterious effects on the public health from duplication, if any, of ambulance services that would result from granting the license;

(4) the estimated effect of the proposed service * * * on the public health;

(5) whether any benefit accruing to the public health would outweigh the costs associated with the proposed service.

*Id.*, subd. 3(g) (emphasis added).

Within 30 days after receiving the ALJ's report, the Commissioner must grant or deny the license to the applicant. In granting or denying the license, the Commissioner considers:

the administrative law judge's report, the evidence contained in the application, and any hearing record and other applicable evidence. *The commissioner's decision shall be based on a consideration of the factors contained in subdivision 3, clause (g).*

*Id.*, subd. 4 (emphasis added).

The Commissioner's decision is the final administrative decision and any person aggrieved by the decision is entitled to judicial review in the manner provided in Minn. Stat. §§ 14.63–14.69. *Id.*, subd. 5 (1990).

In a judicial review of an agency determination, this court may reverse or modify the decision if the substantial rights of the petitioners may have been prejudiced because the administrative findings, inferences, conclusions or decision are in violation of constitutional provisions; in excess of the statutory authority or jurisdiction of the agency; made upon unlawful procedure; affected by other error of law; unsupported by substantial evidence in view of the entire record as submitted; or are arbitrary or capricious. Minn.Stat. § 14.69 (1990).

Decisions of administrative agencies enjoy a presumption of correctness, and deference should be shown by courts to an agency's expertise and special knowledge in the field of its technical training, education and experience. *Reserve Mining Co. v. Herbst,* 256 N.W.2d 808, 824 (Minn. 1977). Agency action must be based on "objective criteria applied to the facts and circumstances of the record at hand." *In re Northwestern Bell Tel. Co.,* 386 N.W.2d 723, 727 (Minn.1986).

### I. *Need for Ambulance Service*

Rochester Ambulance argues the Commissioner erred in determining that it failed to establish a need for service not currently being met by Gold Cross.

The Commissioner's decision to deny the license application appears to be based primarily on the perceived "deleterious effect on the public health" as enunciated in Minn.Stat. § 144.802, subd. 3(g)(3). The Commissioner concluded:

> The introduction of competition for scheduled ambulance service resulting from [Rochester Ambulance's] new service will introduce potential adverse competition, thus affecting the public health within [Gold Cross'] primary service area. The general welfare of the patients in the Rochester area is not best served by competition in this limited market.

The Commissioner reasoned that Gold Cross' revenues would be reduced by competition which would result in either a reduction in services or an increase in ambulance charges.

Rochester Ambulance argues it did not have the means to prove that Gold Cross would not be forced to reduce services or raise rates, thus the Commissioner imposed an impossible burden of proof. In effect, Rochester Ambulance contends that under the Commissioner's analysis, a new license could never be granted because there will always be increased competition.

We agree with Rochester Ambulance that the Commissioner's reasoning is flawed. The Commissioner concluded that Gold Cross would have to raise rates or reduce service without having any financial information about Gold Cross. It may be that scheduled ambulance service provides a significant source of revenue for Gold Cross that subsidizes the emergency service. Thus, if this stable source of revenue is removed, the cost of emergency service might increase.

On the other hand, if Gold Cross operates at a significant profit, competition would not necessarily cause rates for emergency service to rise. There is, however, no information about the profitability of Gold Cross in the record. The ALJ determined Gold Cross could lose anywhere from 33 to 200 airport runs each year, resulting in lost annual revenue of $8,719.26 to $52,844.00. The Commissioner assumed this lost revenue would either have to be made up through increased prices or through a cut in service. Such a determination, however, cannot legitimately be made without knowing anything about Gold Cross' financial health.

Nevertheless, we are compelled to affirm the Commissioner's ultimate determination that Rochester Ambulance failed to establish a need for service not being met by Gold Cross.

Rochester Ambulance bears the burden of proof in this case to show that the Commissioner should have granted the license. Minn.R. 1400.7300, subpt. 5 (1991) provides:

> The party proposing that certain action be taken must prove the facts at issue by

a preponderance of the evidence, unless the substantive law provides a different burden or standard.

We acknowledge that certain information necessary to a proper determination regarding the issuance of the license was wholly within the knowledge of Gold Cross. This does not mean, however, that Rochester Ambulance faced an impossible burden.

■ The public hearing before the administrative law judge is "conducted as contested case hearing under chapter 14." Minn.Stat. § 144.802, subd. 3(d). In a contested case hearing, any means of discovery available pursuant to the Minnesota Rules of Civil Procedure is allowed. Minn.R. 1400.6700, subpt. 2 (1991). Discovery entitles a party to request subpoenas for the attendance of witnesses or the production of documents. Minn.R. 1400.7000, subpt. 1 (1991).

■ Therefore, Rochester Ambulance had the ability to discover financial information about Gold Cross. Depending on what discovery would have revealed, Rochester Ambulance could have presented this evidence to the administrative law judge to prove there would be no deleterious effect on the public health resulting from the duplication of services. Rochester Ambulance, however, made no attempt to discover the type of information necessary to make a proper determination of the deleterious effect. Where the Commissioner's decision is based on an applicant's failure to submit evidence of need, and the lack of evidence is supported by the record, it is not proper for the applicant to seek reversal on the ground the decision is not supported by evidence it had the burden to present. *North Memorial Medical Ctr. v. Minnesota Dept. of Health*, 423 N.W.2d 737, 740 (Minn.App.1988).

■ The arbitrary or capricious standard applies to the review of contested cases. Minn.Stat. § 14.69(f). An agency decision may be arbitrary or capricious if the decision represents the agency's will and not its judgment. *Markwardt v. State*, 254 N.W.2d 371, 374 (Minn.1977). If there is room for two opinions on a matter, the agency's action is not arbitrary or capricious even though the court may believe that an erroneous conclusion has been reached. *Brown v. Wells*, 288 Minn. 468, 472, 181 N.W.2d 708, 711 (1970).

■ Based on the evidence before the Commissioner, we cannot say her decision is arbitrary or capricious. Minn.Stat. § 144.802 manifests a legislative intention to protect the public welfare against deleterious competition in the ambulance service field. *Twin Ports Convalescent, Inc. v. Minnesota State Bd. of Health*, 257 N.W.2d 343, 348 (Minn.1977). This provision embodies a legislative determination that the ambulance service business is one in which the public welfare is not promoted by free enterprise. *Id.* The evidence in this case supports the Commissioner's conclusion that demand for ambulance service is relatively inelastic in the Rochester area. Therefore, in the absence of specific evidence to the contrary, the Commissioner was entitled to presume there would be a deleterious effect on the public health through a reduction in services or an increase in price. Accordingly, we hold the Commissioner did not err in determining Rochester Ambulance failed to carry its burden of showing its proposed ground ambulance service was needed.

## II. *Preemption*

Rochester Ambulance argues the Commissioner's order violates Commerce Clause, U.S. Const. art. I, § 8, cl. 3 as implemented by the Federal Aviation Act, 49 U.S.C.App. § 1305(a)(1) (1988).

■ The Commissioner and Gold Cross urge this court not to consider the argument because it was not raised in the proceedings below. Ordinarily we will not consider arguments, even of a constitutional nature, that were not previously raised. *See State v. Engholm*, 290 N.W.2d 780, 784 (Minn.1980).

In this case, however, neither the ALJ nor the Commissioner had the power to declare Minn.Stat. § 144.802 unconstitutional. Thus, the issue could not have been

addressed in the proceedings below. In *Neeland v. Clearwater Memorial Hosp.,* 257 N.W.2d 366 (Minn.1977), the supreme court addressed a constitutional claim that was not previously raised. The court stated:

> The record leaves no doubt that the constitutional issue was not and could not have been presented to or passed upon by the administrative bodies below. This court has previously ruled upon a constitutional issue raised for the first time on an appeal from an administrative tribunal. We have done so in recognition that the party appealing has raised the issue at the first opportunity in a forum possessing subject matter jurisdiction.

*Id.* at 368 (citations omitted.) Accordingly, we may properly review Rochester Ambulance's constitutional argument in this appeal.

■ The supreme court has previously held that the Minnesota Department of Health cannot regulate the entry of Rochester Ambulance into the air ambulance service. *See Hiawatha Aviation of Rochester, Inc. v. Minnesota Dept. of Health,* 389 N.W.2d 507, 509 (Minn.1986). The court determined that the attempt by the state to control entry into the air ambulance service by licensing was preempted by the Federal Aviation Act, 49 U.S.C.App. § 1305(a)(1). *Id.* at 509.

> Section 1305(a)(1) provides:
> [N]o state * * * shall enact or enforce any law, rule, regulation, standard, or other provision having the force and effect of law relating to rates, routes, or services of any air carrier having authority * * * to provide air transportation.

The supreme court concluded that if an air ambulance is authorized by the Civil Aeronautics Board to operate in a service area including Minnesota, then requiring a license from the state before that authority can be exercised would be directly contrary to 49 U.S.C.App. § 1305(a). *Hiawatha Aviation,* 389 N.W.2d at 509.

In essence, Rochester Ambulance argues the state cannot prohibit any business from operating if it is run by a company that also runs an aviation business. We dis-

agree. This case involves ground ambulance service, not air ambulance service. Rochester Ambulance's air and ground services cannot be considered an "integrated whole", i.e. the air service is not integral to the operation of the ground service, and vice versa.

In *Federal Express Corp. v. California Pub. Utils. Comm'n,* 936 F.2d 1075, 1078 (9th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 2956, 119 L.Ed.2d 578 (1992), the court of appeals stated:

> The trucking operations of Federal Express are integral to its operation as an air carrier. The trucking operations are not some separate business venture; they are part and parcel of the air delivery system. Every truck carries packages that are in interstate commerce by air. The use of the trucks depends on the conditions of air delivery. The timing of the trucks is meshed with the schedules of the planes. Federal Express owes some of its success to its effective use of trucking as part of its air carrier service.

Based on this analysis, the court concluded that regulations of the trucking operations were preempted by the Airline Deregulation Act. *Id.* 936 F.2d at 1079.

In the present case, Rochester Ambulance has operated its air ambulance service successfully for a number of years without having a ground ambulance service. One service clearly does not depend on the other, nor is either one necessary for the continued operation of the other. Thus the ground service is not aviation related and therefore the present ground regulations are not preempted by the Federal Aviation Act.

## DECISION

The Commissioner did not err in denying Rochester Ambulance a license to operate a ground ambulance service. The Minnesota ambulance licensing statute is not preempted by the Federal Aviation Act.

**Affirmed.**