The PRUDENTIAL INSURANCE COMPANY OF AMERICA, a New Jersey corporation, Respondent,

v.

EDEN SQUARE SHOPPING CENTER PARTNERSHIP, a Minnesota general partnership, et al., Respondents,

Kelly J. Doran, Appellant,

State of Minnesota, et al., Defendants.

No. C5–94–1901.

Court of Appeals of Minnesota.

Dec. 6, 1994.

Steven K. Champlin, Scott A. Benson, Dorsey & Whitney, Minneapolis, for Prudential Ins. Co. of America.

Timothy D. Kelly, Erin K. Fogarty, Kelly & Berens, P.A., Minneapolis, for Eden Square Shopping Center Partnership.

David E. Kirkman, Ravich Meyer Kirkman & McGrath, Minneapolis, for Kelly J. Doran.

James E. Ramette, Chanhassen, Trustee for Eden Square Shopping Center Partnership.

Considered and decided by HUSPENI, P.J., and SCHUMACHER and MANSUR,* JJ.

_____

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

## OPINION

SCHUMACHER, Judge.

In January 1993, respondents Eden Square Shopping Center Partnership and Robert M. Larsen (Eden Square and Larsen) defaulted on a commercial mortgage to respondent The Prudential Insurance Company of America (Prudential). Eden Square and Larsen had also executed an assignment of rents to Prudential. In March 1993, Prudential sued to foreclose the mortgage and obtained a receiver for the property. The receiver later sought and obtained a court order to disburse surplus funds to Prudential. At the foreclosure sale, Prudential bought the property for $12 million, leaving a debt of about $2 million.

In proceedings to confirm the foreclosure sale, the parties disputed whether the disbursement to Prudential should be applied to the debt or the redemption amount. The district court applied the receiver's disbursement to the debt. Appellant Kelly J. Doran, Larsen's partner in Eden Square, claims that the disbursement should have been applied to the redemption amount. We affirm.

## FACTS

In December 1989, Prudential loaned Eden Square and Larsen $11,450,000 for a commercial real estate venture on two parcels of land. Larsen and Doran were the two general partners in Eden Square. In return for the loan, Eden Square and Larsen (a) gave Prudential a single mortgage covering both parcels; (b) assigned the project's rents to Prudential as additional security; and (c) agreed that upon default, a receiver could be appointed for the property. The loan was later increased to $12,050,000.

In January 1993, Eden Square and Larsen defaulted on the mortgage. Prudential sought a receiver and sued to foreclose the mortgage. On March 31, 1993, the district court appointed a receiver. Later, the parties stipulated that Prudential was entitled to foreclose the mortgage and sell the property.

The receiver collected more in rents than it cost to run and maintain the property. Pursuant to the assignment, Prudential asked that the receiver disburse the surplus funds to Prudential. In December 1993, the bankruptcy court adjudicated Eden Square bankrupt. In a January 1994 order, the bankruptcy court lifted the bankruptcy stay of the foreclosure action.

When the foreclosure action resumed, the parties disagreed on issues including the disbursement. The receiver then sought and obtained an order directing it to pay $590,000 to Prudential. The receiver made the $590,000 disbursement to Prudential.

At the subsequent foreclosure sale, Prudential bought the property for $12 million, leaving a debt of about $2 million. In the postsale proceedings, Doran did not object to the confirmation of the sale. Doran did, however, claim that the receiver's disbursement to Prudential should be applied to reduce the redemption amount rather than the debt. Initially, the district court confirmed the sale but reserved the disbursement issue. On July 15, 1994, the district court ruled that the disbursement would be applied to the deficiency, not the redemption amount. Doran appeals.

## ISSUE

Did the district court err by applying the disbursement to the deficiency rather than the redemption amount?

## ANALYSIS

■ The construction of a statute is a question of law, which we review de novo. *Hibbing Educ. Ass'n v. Public Employment Relations Bd.*, 369 N.W.2d 527, 529 (Minn. 1985). Doran admits that under the assignment, the deficiency must be paid off before there is a credit to the redemption amount. He claims, however, that such a requirement conflicts with the part of the assignment of rents statute that states:

Nothing contained herein shall prohibit * * * the right to redeem * * * and any excess cash, as that term is used herein,

collected by the receiver under clause (a) * * * shall be credited to the amount required to be paid to effect a reinstatement or redemption.

Minn.Stat. § 559.17, subd. 2 (Supp.1993).

The statute lacks a formal definition of "excess cash," but clause (a) provides that the receiver

shall, with respect to the excess cash remaining after application as provided in section 576.01, subdivision 2, apply it as prescribed by the assignment.

*Id.*, subd. 2(a). Section 576.01 states, in part:

The receiver shall * * * pay the expenses listed in clauses (1), (2), and (3) in the priority as numbered, pay all expenses for normal maintenance of the mortgaged premises *and perform the terms of any assignment of rents which complies with section 559.17, subdivision 2.*

Minn.Stat. § 576.01, subd. 2 (1992) (emphasis added).

Doran claims that under Minn.Stat. § 559.17, subd. 2(a), "excess cash" means "the cash remaining after payment of the statutorily mandated expenses." The portion of subdivision 2(a) that refers to "excess cash" does not refer to "statutorily mandated expenses," but to the funds remaining after "application as provided in section 576.01, subdivision 2." The expenses listed in Minn. Stat. § 576.01, subd. 2 require the receiver to "perform the terms of any assignment of rents which complies with section 559.17, subdivision 2." [1]

Here, the assignment requires payment of the deficiency. Doran, however, reads Minn. Stat. § 576.01, subd. 2 to require payment of only the non-assignment expenses. Doran therefore concludes that "excess cash" may exist under subdivision 2(a) even though the mortgage foreclosure resulted in a deficiency.

■ To adopt Doran's reading of "excess cash" would require the court to ignore that part of Minn.Stat. § 576.01, subd. 2 that requires the receiver to perform the assignment's terms. *See* Minn.Stat. § 645.16 (1992) ("Every law shall be construed, if pos-

---

1. To be a valid assignment under Minn.Stat. § 559.17, subd. 2, the conditions of Minn.Stat. § 559.17, subd. 2(1)–(3) must be met. Doran admits that those conditions are satisfied.

sible, to give effect to all its provisions."). The court would also have to infer that the legislature erroneously wrote subdivision 2(a) to refer to all of Minn.Stat. § 576.01, subd. 2, when the legislature intended subdivision 2(a) to refer to only part of § 576.01, subd. 2. ·Even if a court could, in proper circumstances, infer that the legislature erred in writing a statute, the circumstances here do not support that inference. The legislature simultaneously enacted Minn.Stat. § 576.01, subd. 2 and Minn.Stat. § 559.17, subd. 2(a) in separate sections of the same act. *See* 1977 Minn.Laws ch. 202, § 1 (enacting Minn.Stat. § 576.01, subd. 2); 1977 Minn.Laws ch. 202, § 2 (enacting Minn.Stat. § 559.17, subd. 2). Thus, each provision must have been drafted in light of the other.[2]

Doran next argues that Prudential knew or should have known that "excess cash" would be applied to the redemption amount and therefore, if Prudential wanted to receive a minimum redemption amount, it should have bid accordingly at the foreclosure sale. This argument, however, assumes Doran correctly defined "excess cash" as that remaining after payment of the nonassignment expenses listed in Minn.Stat. § 576.02, subd. 2. Because Doran's definition is erroneous, his argument is without merit.

Finally, Doran argues that assignments of rents are enforced to avoid mortgagors retaining a project's rents and profits after default without paying project expenses, such as taxes, insurance, and repairs. Therefore, Doran continues, because Prudential's security was unimpaired, that goal has been met, and it is unfair not to apply the receiver's disbursement to the redemption amount.

A "mortgagor may assign, *as additional security for the debt secured by the mortgage,* the rents and profits from the mortgaged property." Minn.Stat. § 559.17, subd. 2 (emphasis added). This provision allows a mortgagee to look to both the real estate and to any assigned rents or profits to satisfy a debt if necessary.

Under Doran's interpretation of the statutes, however, "assigned" rents and profits are used to meet the expenses associated with maintaining the real estate, and only if there is more money than necessary to maintain the property *and* the mortgagor decides not to redeem, is the excess used to secure the original mortgage debt by paying a deficiency. Under Doran's argument, because the mortgagor decides whether the "assigned" funds will reduce the redemption amount or reduce the deficiency on the original mortgage debt, any "assignment" is potentially illusory. Thus, we will not adopt such an interpretation.

### DECISION

The district court correctly decided that under Minn.Stat. § 559.17, subd. 2(a) and Minn.Stat. § 576.01, subd. 2, an assignment of rents must be satisfied before there is "excess cash" to apply to a redemption amount.

**Affirmed.**

---

2. Assignments which do not involve a receiver are addressed by Minn.Stat. § 559.17, subd. 2(b) (1992). The parties disagree about the interpretation of subdivision 2(b) and how, if at all, it aids in determining the meaning of Minn.Stat. § 559.17, subd. 2(a). Because a receiver was appointed in this case, subdivision 2(b) is inapplicable and the parties lack standing to argue about a definitive interpretation of that inapplicable statute. *See Twin Ports Convalescent, Inc. v. Minnesota State Bd. of Health,* 257 N.W.2d 343, 346 (Minn.1977) (underlying purpose of standing doctrine is to guarantee there is sufficient case or controversy between parties so that issue is competently presented to court).